**CHUNG YOUNG CHEW, Petitioner,**

v.

**John P. BOYD, District Director of Immigration and Naturalization Service, United States Department of Justice, Seattle District, Respondent.**

**No. 17791.**

United States Court of Appeals
Ninth Circuit.

Oct. 30, 1962.

As Modified on Rehearing
Dec. 20, 1962.

Chan, Bonnell, Uhlman & Callies, and Warren Chan, Seattle, Wash., for petitioner.

Brockman Adams, U. S. Atty., and Philip H. DeTurk, Asst. U. S. Atty., Seattle, Wash., for respondent.

Before ORR, HAMLEY and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

Petitioner commenced a declaratory judgment action in the United States District Court to set aside and enjoin enforcement of deportation orders entered on December 7, 1959 and August 10, 1960. After an answer was filed and certain pretrial proceedings were had the cause was transferred to this court for review of the administrative orders, pursuant to section 5, Pub.L. 87–301, 75 Stat. 651–653; 8 U.S.C. § 1105a, and 5 U.S.C. §§ 1031–1042.

Chung Young Chew is a seventy-five year old Chinese man. On June 29, 1954, while petitioner was incarcerated at the United States penitentiary at McNeil Island, Washington, a warrant for his arrest was issued by the Immigration and Naturalization Service (Service). It was therein alleged that one Chew (Jew), Chung Young, an alien who had last entered this country at San Francisco, California on July 28, 1926, was subject to being deported pursuant to section 241 (a) (11) of the Immigration and Nationality Act of 1952 (Act), 8 U.S.C. § 1251 (a) (11).[1] It was also provided in this warrant that a named immigration officer should take petitioner into custody "and grant him a hearing to enable him to show cause why he should not be deported in conformity with law."

A deportation hearing was had at the penitentiary on September 15, 1954 before George S. Dailey, a special inquiry officer. At this hearing petitioner was not represented by counsel, nor was he provided with the services of an interpreter. On the following day the special inquiry officer entered an order for petitioner's deportation.

Nearly four years later, on August 13, 1959, while petitioner was still incarcerated in the penitentiary, he received notice that upon his release on August 31, 1959, he would be deported to the Island of Formosa. Petitioner then retained counsel who requested that the proceed-

1. Section 1251(a) (11) provides that any alien in the United States shall, upon the order of the Attorney General, be deported who at any time has been convicted of a violation of the laws relating to traffic in narcotic drugs. It was alleged in the warrant that petitioner had been con-

victed of violations of 26 U.S.C. §§ 2553 and 2557 of the 1939 Internal Revenue Code (now 26 U.S.C. §§ 4704 and 7237 of the 1954 Internal Revenue Code), (unlawful sale of heroin), and 21 U.S.C. § 174 (unlawful concealment of heroin).

ings at the hearing of September 16, 1954 be transcribed. The transcript of these proceedings was promptly made and immediately studied by the district examining officer.

On August 20, 1959 that officer moved that the hearing be reopened. His reasons for making this motion were that the record indicated that at the time of the hearing petitioner was not informed of his right to counsel, nor was he questioned as to his ability to understand the English language. The motion was that day acted upon ex parte, and granted by the special inquiry officer. No notice of the pendency of this motion had been served upon petitioner.

On August 31, 1959 petitioner was released from the penitentiary and was immediately taken into physical custody under the authority of the 1954 warrant by an employee of the Service. Further deportation hearings were held before special hearing officer John W. Keane on September 1 and 16, and November 2, 1959. At these hearings petitioner was represented by counsel and an interpreter was utilized. On December 7, 1959 special inquiry officer Keane entered an order for the deportation of petitioner.

Petitioner appealed to the Board of Immigration Appeals of the United States Department of Justice (Board). The Board, on June 14, 1960 ordered withdrawal of the orders of deportation theretofore entered, and directed that the hearing be reopened. The purpose of the reopening was to provide the Service an opportunity to introduce in evidence a record of petitioner's conviction referred to in the warrant of arrest, and to afford petitioner an opportunity to examine the evidence against him, present his defense, and cross-examine witnesses presented by the Government.

The further hearing was held on July 26, 1960 before special inquiry officer Keane. On August 10, 1960 that officer entered an order adopting the decision and order of the special inquiry officer dated December 7, 1959. On appeal the Board, on February 28, 1961, noting that the special inquiry officer (in his order of August 10, 1960), had "adopted" the decision and order of December 7, 1959, affirmed "the order of deportation." A warrant for petitioner's deportation was issued on March 14, 1961. Three days later petitioner commenced this court proceeding.

Petitioner first contends that no final order of deportation has been made. He points out that in its order of June 14, 1960, the Board ordered withdrawal of the deportation orders of September 16, 1954 and December 7, 1959, so that if there is any final order of deportation it must be that of August 10, 1960. Petitioner also calls attention to the fact that the order of August 10, 1960 is not supported by findings of fact and conclusions of law as to deportability, nor does it expressly order petitioner's deportation. Instead, it is recited in the later order, that " * * * [o]n the basis of the entire record, the decision and order of the Special Inquiry Officer dated December 7, 1959, is adopted." [2]

Petitioner argues that with regard to deportation orders, there is nothing in the statutes or regulations which permits a special inquiry officer to avoid his duty of making findings of fact and conclusions of law as to deportability, and of expressly ordering deportation,[3] through the technique of "adopting" a prior decision and order which had already been withdrawn.[4]

Petitioner appealed to the Board from the order of August 10, 1960, but on that

2. The order of December 7, 1959 contained findings of fact and conclusions of law as to deportability and expressly ordered petitioner's deportation.

3. With regard to such duty see 8 C.F.R., §§ 8.11(d), 242.17(a) and 242.18.

4. If the question thus presented really had to do with the "finality" of the order of

August 10, 1960, a jurisdictional question would be presented. Under 8 U.S.C. § 1105a(a), the jurisdiction of this court is limited to the review of final orders of deportation. See Mai Kai Fong v. Immigration and Naturalization Service, 9 Cir., 305 F.2d 239. But the question is not one of finality but whether the order of August 10, 1960 must be set aside

appeal he did not raise the question discussed above. It is provided in 8 U.S.C. § 1105a(c) that an order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations. Under 8 C.F.R., § 242.21(b) petitioner was entitled to appeal to the Board from the order of August 10, 1960. See Mai Kai Fong v. Immigration and Naturalization Service, cited in note 4.

■■■ Failure to take an available appeal to the Board from an order of deportation constitutes a failure to exhaust administrative remedies, thereby depriving a court of appeals of jurisdiction to review any aspect of such order.[5] It follows that failure to raise, on such an appeal, a particular question concerning the validity of the order constitutes a failure to exhaust administrative remedies with regard to that question, thereby depriving a court of appeals of jurisdiction to consider that question.

■■■ For the reasons stated, we do not have jurisdiction to consider the question discussed above concerning the sufficiency or form of the order of August 10, 1960.

Petitioner next contends that the reopened hearings may not be the basis for an order of deportation because they were not legally initiated. He advances four theories in support of this position. The first theory is that the proceedings under the 1954 warrant were completed upon entry of the deportation order of September 16, 1954. Petitioner argues that the Service could not thereafter restore validity to that warrant by withdrawing the order of deportation and ordering the proceedings reopened. What was required in order to lawfully initiate further proceedings, petitioner argues, was the issuance by the Service of an order to show cause.[6]

In 1954 all deportation proceedings were commenced with the arrest of the respondent.[7] Under that procedure the warrant of arrest served three functions. It authorized an immigration officer to take the named person into custody; it informed such person of the asserted ground of deportation; and it directed the immigration officer to grant the named person a hearing to enable him to show cause why he should not be deported. The person arrested was ordinarily released on nominal bail during the pendency of his case.[8] This indicates that retention of custody was not essential to jurisdiction over the alien for purposes of the deportation proceeding.

■■■ For the reasons indicated at a later point in this opinion we do not believe that failure to obtain a new warrant in 1959 rendered illegal the Service's custody of petitioner after his release from the penitentiary.[9] But whatever efficacy the 1954 warrant had with respect to physical custody in 1959, we believe it still had vitality insofar as jurisdiction to conduct further hearings in the original deportation proceedings, and to issue orders of deportation therein, are concerned.

The Board order of June 14, 1960, withdrawing the deportation orders of September 16, 1954 and December 7, 1959, did not have the effect of dismissing that proceeding. On the contrary,

because it is deficient in some substantial respect. If every order or judgment which is asserted to be deficient because of a failure to include essential findings or decretal provisions presents a question of "finality," much of the work of this court would have a jurisdictional aspect which could be dealt with on motions to dismiss appeals.

5. Mai Kai Fong v. Immigration and Naturalization Service, note 4.

6. No such order was issued.

7. The present procedure, requiring that such a proceeding be commenced by the issuance and service of an order to show cause, provided for in 8 C.F.R., § 242.1 (a), was not inaugurated until February 6, 1956. 21 F.R. 98–102. See Gordon & Rosenfeld, Immigration Law and Procedure, § 5.3a, page 521.

8. Ibid.

9. See this opinion after footnote reference 18.

the further provision of the June 14, 1960 order, that the hearing be reopened, makes it clear that the original deportation proceeding was regarded as still pending. Nor has there been any other order or circumstance which had the effect of terminating the proceeding instituted in 1954.[10]

Since the proceeding instituted in 1954 is still pending and is the one in which the challenged deportation orders of December 7, 1959 and August 10, 1960 were entered, there was no necessity for issuance of a show cause order for the purpose of reëstablishing agency jurisdiction.

Petitioner's second theory is that the reopened hearings were not legally initiated because neither the 1954 warrant nor evidence that it was served upon him was admitted in evidence in any hearing at which he was accorded due process.

■ The warrant was admitted as Exhibit 1 in the 1954 proceeding, and testimony was then received that it had been served upon petitioner. The warrant was not re-admitted at the September 1, September 16 or November 2, 1959 hearings, nor was any evidence to the effect that the warrant had been served upon petitioner received at these hearings.[11]

In its decision of June 14, 1960, the Board held that it was error on the part of the special inquiry officer to consider as probative the evidence adduced at the 1954 hearing, because that hearing "on its face does not comply with the provisions of Section 242(b) of the Immigration and Nationality Act (8 U.S.C. 1252 (b))."[12] The warrant was not thereafter offered or received in the subsequent hearing held on July 26, 1960, nor was any evidence to the effect that the warrant had been served upon petitioner received at that hearing.

Thus the Board erred, in its order of February 28, 1961, in stating that "the evidence taken in the first hearing was ignored by the special inquiry officer, and all documentary evidence introduced there has been reintroduced, over objections of counsel." This erroneous statement was the only reason given by the Board for rejecting petitioner's contention, advanced on appeal to that body and now renewed here, that the warrant was not received in evidence at any hearing in which petitioner was accorded due process, and that no evidence that the warrant was served upon petitioner was received at any such hearing.[13]

---

10. The proceeding was not terminated because of the subsequent amendment of 8 C.F.R., § 242.1 to require that deportation proceedings be commenced by the issuance and service of an order to show cause. A savings clause promulgated at the same time that section 242.1 was amended (8 C.F.R., § 242.23) provides for completion of proceedings instituted under the warrant procedure. Under this savings clause such proceedings "shall be completed" in accordance with the regulations which were in effect before the amendment, unless the alien consents to proceed under the new regulations. Counsel for petitioner did so consent at the reopened hearing of September 1, 1959. Such consent, however, had to do only with the procedure to be followed in completing the hearing and did not have the effect of requiring that new proceedings be instituted under the show cause proceedings provided for in amended section 242.1. Petitioner makes no contention to the contrary.

11. It is true that there is a statement on the back of the warrant to the effect that the warrant was served upon petitioner at McNeil Island penitentiary on August 18, 1954. But even if this statement is regarded as prima facie proof of service it is of no avail if the warrant in which it is contained was not properly received in evidence.

12. The reference here was to the failure to inform petitioner at the 1954 hearing that he was entitled to counsel and to the failure to ascertain his ability to understand English, no interpreter being present.

13. In its brief in this court the Service fell into a similar error, stating: "* * * all of the exhibits offered at the hearings of September 1, September 16, and November 2, 1959, were properly admitted." At the hearing of September 1, 1959 the examining officer re-offered the warrant which had been admitted at the 1954 hearing as Exhibit 1. Counsel for petitioner objected on the ground that

The question remains whether the failure to receive in evidence the 1954 warrant or evidence that it was served on petitioner at any hearing subsequent to the abortive one in 1954, requires that the order of deportation under review be set aside.

■ Since, as indicated above, the 1954 warrant of arrest provides the only basis for agency jurisdiction to conduct the deportation proceeding and, for the further reason that the Board itself has held in this case that the warrant was a part of the direct evidence establishing deportability,[14] the warrant was required to be made a part of the record in this proceeding. See 8 C.F.R., § 242.15.[15] Such a record can be made only during the course of a hearing before a special inquiry officer. See section 242(b) of the Act, 8 U.S.C. § 1252(b).[16]

■ The failure to receive this warrant in evidence at one of the hearings subsequent to 1954 therefore constitutes a fatal flaw in the proceedings leading to entry of the deportation order under review. The failure to produce evidence tending to prove that the warrant was served upon petitioner likewise undermines that order, since it was essential to agency jurisdiction that the warrant be served.

We conclude that, in view of the failure to introduce the 1954 warrant in evidence at a hearing in which petitioner was accorded due process, and the failure to produce evidence at such a hearing that the warrant was served upon petitioner, jurisdiction to proceed in the deportation proceedings was not established of record and the deportation order of August 10, 1960 must be set aside. The

there had been no proper identification or proof of service.

The special inquiry officer ruled that since the warrant had been admitted in evidence in the 1954 hearing, there was no reason to have it then admitted again. Counsel for petitioner then stated it to be his position that by reason of due process deficiencies in the 1954 hearing, no evidence purportedly received at that hearing could be regarded as properly in the record (a view later sustained by the Board in its order of June 14, 1960).

In view of this statement, the special inquiry officer ruled that the burden was on the Service to establish identity, and announced he would reserve his ruling "on the question of whether or not sufficient identity of the warrant of arrest has been shown." No such evidence was produced at that hearing and Exhibit 1 was not readmitted at that hearing.

At the hearing of September 16, 1959, the Service produced evidence identifying petitioner as the person by the same name who had been incarcerated at McNeil Island penitentiary. But no evidence was produced at that or any subsequent hearing tending to show that petitioner had been served with the warrant, nor was the warrant received in evidence at that or any subsequent hearing.

14. In its order of June 14, 1960, the Board stated:
"The direct evidence establishing deportability is found primarily in the original hearing of September 15, 1954. This evidence includes the warrant of arrest entered as exhibit 1 * * *."

It was the usual practice in deportation proceedings prior to the 1956 amendment of 8 C.F.R., § 242.1, which practice was followed in this case, to introduce as Exhibit 1 in the deportation proceeding the warrant relied upon as conferring jurisdiction. In its brief in this court the Service advises that this has "always" been the practice.

15. The title and first sentence of 8 C.F.R., § 242.15 read as follows:
"*Contents of record.* The hearing before the special inquiry officer, including the respondent's pleading, the testimony, the exhibits, the special inquiry officer's decision, and all written orders, motions, appeals, and other papers filed in the proceeding shall constitute the record in the case."
This regulation was amended in respects not here material, on December 19, 1961.

16. The second sentence of section 242(b) reads:
" * * * Determination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present, unless by reason of the alien's mental incompetency it is impracticable for him to be present, in which case the Attorney General shall prescribe necessary and proper safeguards for the rights and privileges of such alien. * * *"

appropriate remedy will be for the Service to reopen the proceedings for the purpose of receiving the 1954 warrant in evidence and receiving evidence on the question of whether it was properly served upon petitioner.

We will proceed with an examination of the other contentions advanced by petitioner since they may involve matters which will need further attention in the reopened proceeding.

Petitioner's third theory is that the reopened hearings were not legally instituted because no proof was offered that the warden of the penitentiary was served with a copy of the warrant. This was a requirement of 8 C.F.R., § 242.14, as it existed in 1954, relative to the execution of warrants. It is currently a requirement of 8 C.F.R., § 242.3, which pertains to the new show cause procedure.

■ The Service asks us to assume that the warden was served, although conceding that no place is provided on the warrant to indicate such a service, and that no statement to that effect is to be found in the warrant. We cannot assume that fact any more than we can assume the fact that petitioner was served.

We agree with the Board, however, that the provision of the regulation calling for service upon the warden is for the convenience of the Service (and possibly the institution), and serves no purpose of benefit to the alien. It follows that failure to prove such service does not render such warrant ineffective in establishing jurisdiction over an incarcerated alien for the purposes of a deportation proceeding.

■ Petitioner's fourth and final theory is that the reopened hearings were not legally instituted because the proceeding was reopened in 1959 on motion of an officer of the Service without complying with the requirement of 8 C.F.R., § 8.11. It is there provided that when an officer of the Service is the moving party, a copy of the motion shall be served upon the alien, after which the latter shall have ten days within which to submit a brief.[17]

This deportation proceeding was reopened twice, the first time on August 20, 1959 upon the motion of the district director, and the last time on June 14, 1960 by the Board, following petitioner's appeal thereto from the deportation order of December 7, 1959. The regulation referred to above has application only to the first of these reopenings, since it was the only one which was responsive to a motion made by an officer of the Service.

As indicated earlier in this opinion, the motion for the 1959 reopening was made and granted on the same day, no notice of the pendency of that motion being served upon petitioner. Appealing to the Board from the deportation order of December 7, 1959, petitioner contended that this constituted a violation of 8 C.F.R., § 8.11. In its order of June 14, 1960 the Board sustained this contention, saying:

"We agree with counsel that there was procedural error on the part of the Immigration Service when they failed to give the respondent ten days within which to answer the examining officer's motion of August 20, 1959. * * *"

■ The Board held in that order, however, that petitioner was not prejudiced by this procedural error, since the purpose of the reopening was to afford him a hearing at which he would be represented by counsel, have the services of an interpreter, and have an opportunity to present evidence in his own behalf.

We agree with this view. Moreover, if petitioner felt aggrieved by the failure

17. This regulation expressly includes motions to reopen. The regulation also provides: " * * * A motion not complying fully with this section shall not be accepted and shall be returned to the moving party with a brief statement of the reason for its return."

While this provision was contained in section 8.11 of the regulations at the time of the 1959 reopening, it is now contained in 8 C.F.R., § 103.5, effective December 19, 1961. See also 8 C.F.R., § 242.22, which also became effective on December 19, 1961.

to accord him notice of the motion to reopen, the time for him to have raised such an objection was at the outset of the reopened hearing on September 1, 1959. Although he was then represented by counsel, no such objection was made.[18]

In our opinion the deportation orders under review are not defective because of the failure to comply with 8 C.F.R., § 8.11 in the 1959 reopening of the proceeding.

Petitioner next argues that he was illegally detained throughout the hearings of September 1 and September 16, 1959, and that the introduction of several exhibits was "predicated" upon such illegal conduct.

We do not believe that any of the exhibits to which petitioner refers or any other evidence received in the 1959 and 1960 hearings was obtained as a result of the fact that petitioner was in custody during the September, 1959 hearings. Moreover, we do not find merit in either of the two reasons advanced by petitioner why his retention in custody at that time was illegal.

The first such reason is that at the time the Service took petitioner in custody upon his release from the penitentiary in 1959, the 1954 warrant, which was the only warrant issued, had been "exhausted." This might be true if the Service had once taken petitioner into custody under the 1954 warrant, had then released him, and had thereafter sought to retake custody in 1959 without obtaining a new warrant. See Carlson v. Landon, 342 U.S. 524, 531, 546–547, 72 S.Ct. 525, 96 L.Ed. 547, involving such circumstances.

Where, however, as in this case, a warrant is obtained by the Service while the person named is in a penal institution, and on the basis thereof a detainer is lodged with that institution, the Service gains immediate technical custody. This is retained until the individual is released from the institution at which time actual custody is obtained. In these circumstances there is no release from custody once obtained followed by a later attempt to reobtain custody under the same warrant.[19]

The second reason advanced by petitioner why it was illegal for the Service to have him in custody in September, 1959 is based upon the provisions of 8 C.F.R., § 242.3(b), the material part of which is quoted in the margin.[20]

Petitioner asserts that this regulation was not complied with because there was no deportation order in effect at the time the Service accepted custody of him from the penitentiary. He contends that the deportation order of September 16, 1954 was not in effect when he was released from the penitentiary to the custody of the Service on August 31, 1959. This is true, it is argued, because the August 20, 1959 order reopening the deportation proceeding had the effect of withdrawing the 1954 deportation order.

Title 8 C.F.R., § 242.3(b) is applicable only where, but for a deportation order, the alien must remain at the penal institution to complete the service of his sentence. Petitioner completed his period of penal incarceration on August 31, 1959 and whether or not a deportation order was then in effect he would have had to have been released

---

18. Quite to the contrary, counsel for petitioner advised the special inquiry officer at the outset of this hearing: " * * * we believe this is the time and place for the Service to adduce evidence on the issue of deportability. * * * " See also note 10 above, in which it is noted that at the September 1, 1959, hearing, counsel for petitioner, on behalf of his client, expressly consented to proceed under the current regulations.

19. In so holding we agree with the reasoning of the district judge in Slavik v. Miller, 89 F.Supp. 575, although the district court did not have jurisdiction in that case. Slavik v. Miller, 3 Cir., 184 F.2d 575.

20. "Service and custody; cost of maintenance. An alien confined in an institution or hospital shall not be accepted into physical custody by the Service until an order of deportation has been made and the Service is ready to deport the alien * * * ."

from the penitentiary. The authority relied upon by the Service in taking petitioner into physical custody at that time was not, and was not required to be, an order of deportation. It was the 1954 warrant under which the Service had been holding petitioner in technical custody while he was in the penitentiary.

Petitioner argues that the deportation orders must be set aside because, on the critical question of whether he had been convicted of the deportation crime charged in the warrant, hearsay testimony was received from a witness for the Service. This witness, Mrs. Catherine C. Cummins, was Camp Records Control Clerk at the penitentiary. She testified that she had custody of the records of the inmates, including those of petitioner. Over objection, she further testified that petitioner was incarcerated at the penitentiary to serve a sentence for "[s]elling and concealing narcotics."

We need not decide whether the reception of this testimony was erroneous, because in any event it was innocuous. The only allegation of the warrant concerning which this testimony had relevance was the charge that petitioner was deportable because he had been convicted of violations of specified narcotics laws, namely, 21 U.S.C. § 174 (unlawful concealment of heroin), and 26 U.S.C. §§ 2553, 2557 now 26 U.S.C. §§ 4704 and 7237 (unlawful sale of heroin). Mrs. Cummins' testimony was too indefinite and incomplete to constitute proof of that allegation. [21]

The record of conviction, consisting of a copy of a judgment, sentence and conviction was offered and admitted into evidence as Exhibit 2, over petitioner's objection, in the reopened hearing on July 26, 1960.

Petitioner argues that this exhibit was erroneously admitted because: (1) there was a failure to comply with Rule 44, Federal Rules of Civil Procedure, 28 U.S.C., relating to the proof of official records; [22] and (2) the record of conviction was not identified in any manner as relating to petitioner.

There was unquestionably a failure to comply with Rule 44, since Exhibit 2 is not accompanied by a certificate that the attesting officer has custody of the record of which the exhibit is a copy.[23] But the Board held that, in any event, this exhibit had been properly admitted under 28 U.S.C. § 1733(b) relating to the admission of "properly authenticated" copies of transcripts of any books, records, papers or documents of any department or agency of the United States.

Assuming that a judgment of conviction is embraced within the term "books, records, papers or documents of any department or agency," Exhibit 2 was nevertheless not admissible under section 1733(b) because it was not properly authenticated. Rule 44 referred to above describes how a copy of such a document may be authenticated. See Yaich v. United States, 9 Cir., 283 F.2d 613, 617.[24] It has already been noted that there was a failure to comply with Rule 44.

---

21. The Board itself apparently recognized this because, in its order of June 14, 1960, it ordered a reopening of the proceeding mainly to permit the Service to introduce, as an exhibit, a record of petitioner's conviction.

22. In material part, Rule 44 reads as follows:

"(a) *Authentication of Copy.* An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. * * *

"(c) *Other Proof.* This rule does not prevent the proof of official records or of entry or lack of entry therein by any method authorized by any applicable statute or by the rules of evidence at common law."

23. The Board accordingly erred in holding to the contrary in its order of February 28, 1961.

24. In the Reviser's note to 28 U.S.C. § 1733(a) it is stated that in drafting that section as a substitute for the previous statute on the subject: "Numerous provisions with respect to authentication were omitted as covered by Rule 44 of the Federal Rules of Civil Procedure."

It is true that Rule 44 does not prevent the proof of official records by any method authorized by any applicable statute or by the rules of evidence at common law. This is expressly provided for in Rule 44(c). But the Service does not call attention to any other statute or common law rule of evidence under which Exhibit 2 would have been admissible.

The Service argues that in administrative hearings Rule 44 is not controlling. Assuming this to be true, that rule nevertheless defines an acceptable method of authenticating a public record which was not followed. The method which was followed provided no assurance that the attesting officer had actual custody of the original record, without which he would not be in a position to make such attestation.

The Service also contends that even if Exhibit 2 was not properly admitted, there was other substantial evidence establishing that petitioner had been convicted of the crimes referred to in the 1954 warrant. Confining our examination to the testimony and exhibits the Service calls to our attention in support of this view, we do not agree.

We conclude that the judgment and sentence of conviction, received as Exhibit 2, should not have been admitted in evidence because it was not properly authenticated. Without that exhibit there was a lack of substantial evidence to prove the allegation of the warrant concerning petitioner's conviction of violating the narcotics laws. Upon the remand of this proceeding, the Service will have an opportunity to submit competent proof of such conviction.

We find no merit in petitioner's argument that Exhibit 2 was inadmissible for the additional reason that there was inadequate proof that he is, in fact, the person named in the judgment and sentence. Assuming that petitioner is correct in asserting that identity of names was all that was proved, this was suffi-cient to prove identity, where no effort was made to rebut such proof.[25]

Petitioner asserts that there was error in several other respects. Each of these contentions has been considered and we are of the opinion that they lack merit.

The order of deportation dated December 7, 1959 and the purported order of deportation dated August 10, 1960 are set aside and the cause is remanded to the Service for further proceedings consistent with this opinion.

---

**25.** Williams v. Mulcahey, 6 Cir., 250 F.2d 127; Vlisidis v. Holland, 3 Cir., 245 F.2d 812.