**Nirmal Singh BAJWA, Plaintiff,**

v.

**Charles T. COBB, District Director of the United States Immigration and Naturalization Service, Defendant.**

Civ. A. No. 88–1989–Y.

United States District Court,
D. Massachusetts.

Dec. 18, 1989.

Iris Gomez, Nancy Kelly, Harvey Kaplan, Maureen O'Sullivan, Jeremiach Friedman, Law Office of Harvey Kaplan, Boston, Mass., for plaintiff.

Suzanne Durrell, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This case is before the Court upon a Petition for a Writ of Habeas Corpus. The petitioner, Nirmal Singh Bajwa ("Bajwa"), challenges the determination of the Board of Immigration Appeals ("Board") finding him excludable under section 212(a)(19) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. sec. 1182(a)(19) (1988), and denying his requests to withhold deportation and for asylum. The Court rules that it has no jurisdiction to reach the excludability issue as it was not properly raised in the proceedings below. Finding the appeal on the issues of withholding of deportation and asylum properly raised, however, the Court remands the matter to the Board for further proceedings consistent with this opinion.

## I. BACKGROUND [1]

Mr. Bajwa is a native and citizen of Punjab, India and a practitioner of the Sikh religion.[2] In 1978, he became a member of

---

**1.** This recitation is gleaned from the record before the Board supplemented, as noted, by the allegations Bajwa makes which are material to the issues presented. Throughout this opinion, "AR" will stand for the Administrative Record compiled by the Board.

**2.** "The Sikhs were, and are, members of a monotheistic Hindu sect, dissenters from Brahmanical Hinduism, which was founded in the early sixteenth century. Being surrounded by orthodox Hindus and Muslims, they became a militant people, and under their greatest leader, Ranjit Singh (1780–1839), they founded a strong state in the Punjab where the sect originated." B. Farwell, *Queen Victoria's Little Wars* 37 (1972).

When the British invaded Sikh territory in 1845 with an army comprised predominantly of orthodox Hindu troops from the Bengal Presidency, the Sikhs may have had as many as 20,000 men under arms. "It [the Sikh force] was a splendid army. Its equipment was modern and it had the largest and best artillery park in Asia. The Sikhs made fine soldiers and they had been trained by mercenary European officers, mostly French, but also some Britons, Americans, Germans, Italians, and other nationalities. Their drill was patterned after the French army, and even the words of command were in French." *Id.* at 38. In the two wars that ensued (1845–46 and 1848–49) before the Sikhs were engulfed in the British Indian empire, they stood up to the British forces in a series of pitched battles of such ferocity as to cause the British government to strike two medals (Sutlej Campaign Medal and Punjab Campaign Medal) and confer seven battle honors (MOODKEE, FEROZESHAH, ALIWAL, SOBRAON, MOOLTAN, CHILLIANWALLAH, and GOOJERAT) upon their own troops. B. Mollo, *The Indian Army* 49–50 (1981). Indeed, the 24th Regiment (the South Wales Borderers)—a battalion of which was annihilated by the Zulus 33 years later at Isandlwana—"was nearly wiped out in India when it charged the Sikh's Krupp-made artillery with nothing but bayonets." R. Edgerton, *Like Lions They Fought* 54 (1988).

In less than a decade, the British were recruiting loyal Sikh regiments to stamp out mutiny in the Hindu armies of the Honorable East India Company. W. Carman, *Indian Army Uniforms*

the All India Sikh Student Federation ("Federation"). The Federation's general goals are promoting the Sikh religion and the establishment of a separate Sikh state. During his six years as a member of the Federation, Bajwa's involvement was, he says, limited to attending demonstrations and volunteering approximately once a month to transport other Sikhs to Federation meetings.

While a member of the Federation, Bajwa alleges he was arrested four times. The first was in 1980 during a demonstration against the government. He was one of 600 arrested (out of thousands attending) and was held seven days at the Tihar Jail in Deli.

In June 1984, approximately one month after the Indian army invaded the Golden Temple, Bajwa was allegedly arrested again. For a period of three days, he contends he was interrogated day and night concerning his belief in a separate Sikh state and his alleged involvement in the armed struggle to achieve Sikh independence. He admitted membership in the Federation but denied all other charges.

In December 1984, three members of the Federation who lived near Bajwa's village were seized by Indian authorities. He does not know where they were taken or what became of them. Approximately one week after their arrest, Bajwa was again allegedly detained by police. He was taken approximately 90–100 kilometers from his home to Ludhiana. He asserts he was held for a ten day period where both he and his religion were again "abused" during repeated interrogations. He was again released without charge.

The fourth arrest occurred in January, 1985. Bajwa was taken to a location approximately twenty minutes travel time from his village. He was placed in a room that was like a "cattle shed" and was provided little to eat. As before, he was repeatedly questioned about weapons and "those people." On approximately the fifth day of interrogation his captors knocked him unconscious with a blow to the back of the head with a pistol. In the middle of February, 1985, Bajwa alleges he escaped with help of a guard he bribed with a gold bracelet.

Bajwa hid in the home of a friend until he was able secretly to return to his family and pick up the equivalent of $1000 American dollars. He went from there to Deli where he made arrangements to leave the country. In May of 1985, he fled to West Germany where he remained until 1986. He asserts that after being denied asylum in West Germany he purchased a passport for approximately 300 marks under the name of "Boris Bajwa" and a ticket to Montreal, Canada, where he intended to apply for Canadian asylum. On October 17, 1986, when the plane stopped in New York (en route to Montreal), Bajwa was found to have a fraudulent passport and was taken into custody by the Immigration & Naturalization Service ("INS").

## II. PROCEDURAL HISTORY

The INS served Bajwa with Form I–122 informing him he appeared to be excludable from the United States under secs. 212(a)(19) and (20) of the Act.[3] Specifically, Form I–122 charged that Bajwa appeared to have willfully misrepresented a material

80–90 (1961). Thereafter, Sikh regiments served with distinction in the British Indian Army, A. Lovett & G. MacMunn, *The Armies of India* 133–40 (1911), the 1st Sikh Infantry marching to its own pipers. V. Melegari, *The World's Great Regiments* 212–13 (1968).

While "the India which took over in 1947 was established explicitly as a secular state," R. Emerson, *From Empire To Nation* 162 (1960), the friction between Brahmanical Hindu and Sikh has as tragic historical antecedents as, for example, the strife in Northern Ireland.

**3.** Section 212(a)(19) of the Act holds excludable from the United States:

Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure, or has sought to procure or has procured, a visa, other documentation, or entry into the United States. . . .

8 U.S.C. sec. 1182(a)(19). Section 212(a)(20) holds excludable from the United States:

. . . any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document. . . .

*Id.,* sec. 1182(a)(20).

fact in order to gain admission into the country, and that he appeared to be an immigrant not in possession of a valid, unexpired immigrant visa and not exempt from the presentation of one. Exclusion proceedings against Bajwa were commenced upon the issuance of the Form I–122. He was detained pursuant to sec. 235(b) of the Act for a hearing before an immigration judge. *See* 8 U.S.C. sec. 1225(b). He was held by INS until March, 1988, when he was released upon the posting of fifteen hundred dollars.

On December 9, 1986, Bajwa formally applied for asylum. (AR–339) Under 8 C.F.R. sec. 208.3(b) his application for asylum is also considered a request for withholding exclusion or deportation pursuant to 243(h) of the Act, 8 U.S.C. sec. 1253(h). *See I.N.S. v. Stevic*, 467 U.S. 407, 420–21 n. 13, 104 S.Ct. 2489, 2496 n. 13, 81 L.Ed.2d 321 (1984). During a November 19, 1986 hearing that preceded his formal application, Bajwa, through counsel, conceded excludability on both grounds charged in Form I–122 but argued for withholding of deportation and asylum. (AR–208) In an oral opinion dated March 27, 1987, the immigration judge found Bajwa excludable as charged and denied his requests for withholding of deportation and asylum. (AR–181)

On April 6, 1987, Bajwa filed an appeal in which he did not specifically raise the excludability issue. (AR–179) The Board issued its decision on April 12, 1988, denying Bajwa's requests for withholding of deportation and asylum. The Board found that Bajwa did not "contest on appeal his excludability" and went on to say that it was "satisfied from a review of the record that the applicant received a fair hearing and that his excludability has been clearly established." (AR–2)

## III. STANDARDS OF REVIEW

■ Factual determinations of the Board are reviewed under a substantial evidence standard while questions of law are reviewed *de novo*. *Desir v. Ilchert*, 840 F.2d 723, 726 (9th Cir.1988) (citing *Lazo–Majano v. I.N.S.*, 813 F.2d 1432, 1434

[9th Cir.1987] ). The ultimate conclusion either to grant or deny the alien discretionary relief of asylum is reviewed under the "abuse of discretion" standard. *Vides–Vides v. I.N.S.*, 783 F.2d 1463, 1466 (9th Cir.1986); *Garcia–Ramos v. I.N.S.*, 775 F.2d 1370, 1373 (9th Cir.1985). Because the Board ruled that Bajwa was not a "refugee" within the meaning of the asylum statute, it never reached the ultimate discretionary decision whether to grant or deny Bajwa asylum. Thus, this question is not before the Court upon the present record.

## IV. EXCLUDABILITY

■ The record shows that Bajwa, through counsel, conceded his excludability before the immigration judge. He then failed to raise the issue on appeal. In order to preserve an issue for appeal, an alien must raise such issue before the adminstrative agency. *Tejeda–Mata v. I.N.S.*, 626 F.2d 721, 726 (9th Cir.1980), *reh'g denied*, 665 F.2d 269, *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). This Court holds that his failure to raise the issue below "constitutes a failure to exhaust administrative remedies with respect to that [issue] and deprives [the Court] of jurisdiction to hear the matter." *Vargas v. U.S. Dept. of Immigration and Naturalization*, 831 F.2d 906, 907–08 (9th Cir.1987) (citing *Chung Young Chew v. Boyd*, 309 F.2d 857, 861 [9th Cir. 1962] ).

■ Further, this Court concludes that the Board's statement that "[w]e are satisfied from a review of the record that the applicant received a fair hearing and that his excludability has been clearly established" (AR–2) does not constitute a *sua sponte* consideration of the immigration judge's excludability finding. The Board clearly stated that "[t]he applicant does not contest on appeal his excludability under sections 212(a)(19) and (20) of the Act" (AR–2) and further that "[t]he only issue on appeal is whether the immigration judge properly denied the applicant's applications for asylum and withholding of deporta-

tion." (AR–2) Therefore, this Court declines to reach the issue.

## V. WITHHOLDING OF DEPORTATION AND POLITICAL ASYLUM

The only issues properly before this Court are whether the Board's decision (1) denying withholding of Bajwa's deportation on the ground that he failed to establish a "clear probability of persecution" and (2) denying his application for asylum on the ground that he did not establish a "well-founded fear of persecution" are supported by substantial evidence.

### A. *Withholding Deportation*

■■■ Section 243(h) of the Act states: The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. sec. 1253(h)(1). This section requires the petitioner to show that "it is more likely than not that [he] would be subject to persecution" if he were returned to India. *Stevic,* 467 U.S. at 429–30, 104 S.Ct. at 2501. Thus, the applicant must establish a "clear probability of persecution" before a withholding of deportation is granted. *Id.* at 413, 104 S.Ct. at 2492. The standard is an objective one.

At his hearing, Bajwa introduced objective evidence of the turmoil between Sikhs and Hindus.[4] He presented evidence of being arrested, confined and abused without formal charges being brought against him.

The immigration judge did not believe him.

In rendering its decision on review, however, the Board held that it did not rely on the "immigration judge's adverse credibility finding." (AR–8) The Board went on to say that it "considered all of the applicant's evidence under the proper standards and

ha[s] found that the applicant failed to establish his eligibility for asylum and withholding of deportation." (AR–8) The Board held that "[i]t has not been shown that the authorities' arrest and detention of the applicant because of his [Federation] membership was persecution for one of the specified grounds rather than legitimate investigation into the violent activities of that group." (AR–8) As regards his arrests, the Board stated that:

> [t]he applicant has not established that his [initial] arrest was for his religion or political opinion rather than for some violation of some law against demonstrations or public disturbances in general. With regard to the applicant's other three arrests, the record reflects, contrary to the applicant's impression of his organization, that the [Federation] does advocate the use of weapons to secure a separate state for Sikhs, and that some of its members have engaged in terrorist activities to help achieve this goal.

(AR–7–8) The Board went on to note that the last two arrests occurred at a time when the Federation was officially banned by the Indian government in an effort to curb violence in the Punjab.

The Board concluded that because the Indian government had information indicating that Bajwa was a member of the Federation it had a "legitimate right to seek him out to determine the extent of his involvement with this violent organization" and further that "the government's actions in this regard would not be presumed to have been politically motivated." (AR–7–8) In sum, the Board concluded that the Indian government was proceeding against Bajwa, not because of his political beliefs, but because it suspected him of being a terrorist.

In light of the record before the Board and its determinations thereon, this Court holds that the Board could properly conclude that Bajwa had failed to establish "a clear probability of persecution" and is thus not entitled to the withholding of deportation pursuant to section 243(h) of the

---

**4.** In this regard, Bajwa relied upon the Congressional Record, a report by Amnesty International, and the testimony of the president of the World Sikh Association. (AR–225)

Act, 8 U.S.C. sec. 1253(h)(1). *Stevic*, 467 U.S. at 413, 104 S.Ct. at 2492.

### B. *Asylum*

In contrast to the withholding of deportation "clear probability" standard, the asylum standard requires an alien only to establish a "well-founded fear of persecution." Section 208(a) of the Act governing asylum procedures holds that an alien:

> may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

8 U.S.C. sec. 1158(a). Section 101(a)(42)(A) of the Act defines the term "refugee" to mean:

> any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or *a well-founded fear of persecution* on account of race, religion, nationality, membership in a particular social group, or political opinion....

*Id.*, sec. 1101(a)(42)(A) (emphasis added). ▮ The "well-founded fear" standard does not require proof that it is more likely than not that the alien will be persecuted; it is enough if the alien shows that "persecution is a 'reasonable possibility.'" *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 440, 107 S.Ct. 1207, 1217, 94 L.Ed.2d 434, quoting *Stevic*, 467 U.S. at 424–25, 104 S.Ct. at 2497–98. The "well-founded" fear standard contains both an objective and subjective element. *Rodriguez–Rivera v. U.S. Dept. of Immigration and Naturalization*, 848 F.2d 998, 1001 (9th Cir.1988) (citing *Cardoza–Fonseca*, 480 U.S. at 431, 107 S.Ct. at 1212). The subjective element requires that the alien's fear be genuine; the objective element demands a showing, "'by credible, direct, and specific evidence in the record of facts that would support a *reasonable* fear that the petitioner faces persecution.'" *Id.* at 1002 (quoting *Rebollo–Jovel v. I.N.S.*, 794 F.2d 441, 443 [9th Cir. 1986] ) (emphasis original). If an individual establishes that she has a well-founded fear of persecution and is thus a refugee, it is within the discretion of the Attorney General to grant asylum. 8 U.S.C. 1158(a).

▮ Section 101(a)(42)(A) thus requires Bajwa to present "'specific facts' through objective evidence to prove either past persecution or 'good reason' for future persecution." *Cardoza–Fonseca*, 480 U.S. at 425, 107 S.Ct. at 1209 (quoting *Cardozo–Fonseca v. I.N.S.*, 767 F.2d 1448, 1453 [9th Cir.1985] ). This Bajwa did. Although his evidence was insufficient to withhold deportation, Congress has set up two different standards to govern withholding of deportation and asylum. As the Supreme Court stated in *Cardoza–Fonseca*:

> [t]he 'would be threatened' language of sec. 243(h) has no subjective component, but instead requires the alien to establish by objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation.... In contrast, the reference to 'fear' in the sec. 208(a) standard obviously makes the eligibility determination turn to some extent on the subjective mental state of the alien.

480 U.S. at 430–31, 107 S.Ct. at 1212–13. The Supreme Court went on to say that "[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." *Id.* at 431, 107 S.Ct. at 1212.

It is under this "well-founded fear of persecution" standard—a standard more favorable to the petitioner—that the Board's opinion founders on the shoals of ambiguity. While the Board held that it did not rely on the "immigration judge's adverse credibility finding," but instead "considered all of the applicant's evidence under the proper standards," this rather conclusory rubric is virtually unintelligible. If the Board meant that it never had to address the issue of Bajwa's credibility because it found sufficient, independent evidence in the record from which to conclude he did not have "a well-founded fear of persecution," a very close question is presented concerning whether, on this record, there exists "substantial evidence" to support that conclusion. On the other hand, if the Board actually credited

Bajwa's testimony but nevertheless concluded he has failed to show a "well-founded fear of persecution," it is legally in error. In this latter instance Bajwa would have demonstrated his subjective fear and this, coupled with the totality of the undisputed evidence of Indian government action concerning him, would require a discretionary ruling by the Attorney General concerning whether he should be granted asylum. 8 U.S.C. sec. 1158(a).

Because it is for the Board, and not this Court, to make the requisite factual findings with sufficient clarity to afford meaningful review, this matter must be remanded to the Board for further proceedings in accordance with this opinion. If the Board disregards Bajwa's testimony altogether in light of the remainder of the record, he may again petition for habeas corpus relief. If the Board credits his testimony, the Court assumes the Attorney General will address the discretionary issue of whether to grant Bajwa asylum, a matter on which this Court expresses no opinion.

## VI. CONCLUSION

Since the excludability issue was not properly raised in the proceedings below, this Court has no jurisdiction to reach it. Regarding the issue of withholding of deportation, based on the record the Board could properly conclude that Bajwa failed to establish "a clear probability of persecution" and is thus not entitled to withholding of deportation pursuant to 8 U.S.C. sec. 1253(h)(1). Regarding the issue of political asylum pursuant to 8 U.S.C. sec. 1158(a), however, the Court remands this case to the Board to determine, in accordance with this opinion, whether it credits Bajwa's testimony.

SO ORDERED.