47 F.3d 1178
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Carlos Alberto VELIS, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-9526.
 United States Court of Appeals, Tenth Circuit.
 Feb. 13, 1995.
 BIA
 
 1
 REVERSED.
 
 
 2
 Before KELLY and HENRY, Circuit Judges, and BURCIAGA, Senior District Judge.*
 
 
 3
 ORDER AND JUDGMENT**
 
 
 4
 BURCIAGA, Senior District Judge.
 
 
 5
 Petitioner Carlos Alberto Velis appeals from the decision of the United States Board of Immigration Appeals ("BIA") denying his application for withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a) and we reverse and remand to the BIA for further findings as set forth below.
 
 
 6
 Petitioner is a native and citizen of El Salvador. Petitioner came to the United States in February 1981 and acquired legal permanent residency in January 1990. In November 1992, Petitioner was convicted of attempted possession of a quarter of a gram of cocaine. In July 1993, the Immigration and Naturalization Service ("INS") took Petitioner into custody in Colorado. At a hearing in September 1993, Petitioner conceded his deportability but requested withholding of deportation in the form of asylum. Immigration Judge G. MacKenzie Rast heard Petitioner's asylum application in November 1993. At the hearing's conclusion, Judge Rast denied Petitioner's application. Petitioner timely appealed to the BIA, which dismissed his appeal Per Curiam in March 1994.
 
 
 7
 Petitioner testified to the following facts at the hearing before Judge Rast. When Petitioner lived in El Salvador, he worked for a coffee processing company. Petitioner and members of Petitioner's family joined SICAFE, a national labor union for coffee industry workers. Petitioner was active in SICAFE, serving as a liaison between union leaders and members. Several of Petitioner's family members were killed, abducted, or tortured, and Petitioner believes that government-controlled agents committed these acts against his family due to their SICAFE membership.
 
 
 8
 Petitioner himself suffered mistreatment at the hands of the Salvadoran authorities. Shortly before Petitioner left the country, the Salvadoran police took him into custody. During his week-long detention, the police handcuffed Petitioner, tied his legs, suspended him from the ceiling, and beat him pinata style. Petitioner indicates that the police questioned him about guerrilla activities. After his release, Petitioner fled to the United States. Petitioner claims that the Salvadoran government perceives SICAFE as a political opponent affiliated with the Frente Farabundo Marti para la Liberacion Nacional ("FMLN") guerrillas, and that some 75% of SICAFE's junior members have been killed because of their union membership.
 
 
 9
 Petitioner alleges reversible error in several respects. First, Petitioner claims that the BIA erred as a matter of law in concluding that Petitioner failed to establish past persecution on account of his political opinion or membership in a particular social group. Next, Petitioner alleges that because he established past persecution on account of an enumerated basis, the INS was required but failed to show that conditions in Petitioner's home country have changed to such an extent that Petitioner could no longer have a well-founded fear of persecution were he returned to that country. Petitioner's next allegation is that the BIA incorrectly held that Petitioner could not satisfy his burden of proof through credible testimony alone. Finally, Petitioner asks that the Court remand his case to the BIA because Petitioner has acquired new, pertinent, previously unavailable corroboratory evidence that the BIA should consider.
 
 
 10
 The Court reviews the BIA's factual findings for substantial evidence in the record. Nguyen v. INS, 991 F.2d 621, 625 (10th Cir.1993). To obtain reversal of such findings, the petitioner must show that "the evidence he presented was so compelling that no reasonable factfinder" could find as the BIA did. INS v. Elias-Zacarias, 112 S.Ct. 812, 817 (1992); Rubio-Rubio v. INS, 23 F.3d 273, 277 (10th Cir.1994). The Court reviews the BIA's legal determinations de novo, see Nguyen, 991 F.2d at 623. However, the Court will accord deference to the BIA's legal determinations unless they are clearly contrary to the statute's language or to congressional intent. INS v. Cardoza-Fonseca, 480 U.S. 421, 445-48 (1986).
 
 
 11
 Petitioner has conceded that he is deportable due to his conviction of attempted possession of a controlled substance. Petitioner therefore seeks withholding of deportation pursuant to 8 U.S.C. Sec. 1253(h)(1), which states:
 
 
 12
 The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.
 
 
 13
 8 U.S.C. Sec. 1253(h)(1) (1988 & Supp.1992). An alien seeking withholding of deportation must show a "clear probability" that he or she will be persecuted on account of an enumerated basis, i.e., the alien must show that such persecution is "more likely than not." INS v. Stevic, 467 U.S. 407, 424 (1984); 8 C.F.R. Sec. 208.16(b)(1) (1993). The standard is more rigorous than that for granting asylum. See 8 U.S.C. Sec. 1101(a)(42)(A), 1158(a) (1988); Cardoza-Fonseca, 480 U.S. at 430-32.
 
 
 14
 The applicant for withholding bears the burden of proving his or her eligibility. 8 C.F.R. Sec. 208.16(b). However, should the applicant establish that he or she has suffered past persecution on account of an enumerated basis such that his or her life or freedom was threatened, the courts shall presume that the applicant's life or freedom would be threatened on return to his or her country "unless a preponderance of the evidence establishes that conditions in the country have changed to such an extent that it is no longer more likely than not that the applicant would be so persecuted there." 8 C.F.R. Sec. 208.16(b)(2); Matter of Chen, Interim Decision 3104, 1989 WL 331860 (BIA April 25, 1989).
 
 
 15
 This Court must first address the BIA's findings regarding Petitioner's credibility. The BIA's sole reference to Petitioner's credibility is brief and ambiguous. In its Order Per Curiam the BIA states: "The alien's own testimony ... can suffice where the testimony is believable, consistent, and sufficiently detailed.... The respondent has not met that burden of proof in this case." In Re Velis, No. Amc-wsl-hlw, Order Per Curiam at 1 (BIA March 7, 1994). Before we may review this factual finding for substantial evidence, we must have before us an adequate explanation of the finding. See, e.g., Aguilera-Cota v. INS, 914 F.2d 1375, 1381 (9th Cir.1990) ("[A] trier of fact who rejects a witness's positive testimony because in his or her judgment it lacks credibility should 'offer a specific, cogent reason for [his] disbelief.' ") (citations omitted); see also Shahandeh-Pey v. INS, 831 F.2d 1384, 1389 (7th Cir.1987) ("We, of course, recognize that the board may have reason to discredit evidence favorable to a petitioner for reasons that are within its expertise; but, if the board articulates no reasons, we are unable to discharge our statutory obligation of review."); Bajwa v. Cobb, 727 F.Supp. 53, 58-59 (D.Mass.1989) ("[I]t is for the Board, and not this Court, to make the requisite factual findings with sufficient clarity to afford meaningful review.").
 
 
 16
 In this case, the Court cannot meaningfully review the BIA's finding that Petitioner was incredible because the BIA has failed to explain that finding. The Court will therefore reverse the BIA's dismissal of Petitioner's appeal and remand so that the BIA may specifically and cogently explain whether and why or why not it finds Petitioner to be credible.
 
 
 17
 The BIA did observe in its Order Per Curiam that Petitioner believes he was detained and beaten because of his union membership, but that his own testimony regarding the Salvadoran authorities questioning him about guerrilla activities "contradicts the alleged belief." Velis, Order Per Curiam at 1. However, one cannot rationally find that the two propositions are contradictory. This Court would not be the first to note that the Salvadoran guerrilla organization FMLN is "leftist" and that consequently the Salvadoran government has persecuted members of perceived leftist organizations including labor unions. See, e.g., Platero-Cortez v. INS, 804 F.2d 1127, 1129 (9th Cir.1986) (former agent of Salvadoran National Guard testified that he saw petitioner's name on death list because petitioner was suspected of being subversive and "one of his sisters participated in an El Salvadoran coffee labor union, believed to be part of the leftist movement").
 
 
 18
 Should the BIA find Petitioner's testimony to be credible, substantial evidence does not support the finding that Petitioner did not suffer past persecution "on account of" his membership in SICAFE. We find the critical question to be whether the police detained Petitioner in the first place because of his SICAFE membership. Petitioner testified that his SICAFE membership was the reason the police arrested him. Admin.R. at 105. Petitioner also testified that the government perceived SICAFE to be a leftist organization opposed to the government and affiliated with the FMLN guerrillas. Admin.R. at 114-15. This evidence strongly suggests at the least that the police detained Petitioner because of his SICAFE membership and to investigate guerrilla activities. See Matter of Fuentes, Interim Decision 3065, 1988 WL 235456 (BIA April 18, 1988) ("[A]n applicant does not bear the unreasonable burden of establishing the exact motivation of a 'persecutor' where different reasons for actions are possible.").
 
 
 19
 Most significantly, the record is entirely barren of any reason for which the police would have detained Petitioner, beat him, or sought from him information regarding guerrilla activities if not for his association with "leftist" SICAFE. The absence of other governmental motives is significant. According to one court, "[w]hen a government exerts its military strength against an individual or a group within its population and there is no reason to believe that the individual or group has engaged in any criminal activity or other conduct that would provide a legitimate basis for governmental action, the most reasonable presumption is that the government's actions are politically motivated." Hernandez-Ortiz v. INS, 777 F.2d 509, 516 (9th Cir.1985). If the police did not detain Petitioner on account of his SICAFE membership, then they must have detained him "entirely at random and tortured [him] for information about the guerrillas...." Pet.Reply Br. at 3 (emphasis in original). Logic revolts at drawing such an inference, and no reasonable factfinder could do so.[1]
 
 
 20
 In finding that Petitioner did not suffer past persecution on account of his SICAFE membership, Judge Rast and the BIA appear to have relied upon the fact that Petitioner provided no documentary or other corroboratory evidence to buttress his testimony on this point. See, e.g., Velis, Order Per Curiam at 1. However, provided the BIA finds Petitioner's testimony to be credible, Petitioner need not present any such additional evidence if he is unable to do so. See, e.g., Turcios v. INS, 821 F.2d 1396, 1402-03 (9th Cir.1987); Carvajal-Munoz v. INS, 743 F.2d 562, 574 (7th Cir.1984) (statutorily overruled on other grounds, see M.A. A26851062 v. INS, 858 F.2d 210 (4th Cir.1988)); Matter of Mogharrabi, Interim Decision 3028, 1987 WL 108943 (BIA June 12, 1987). Corroboratory evidence was unavailable to Petitioner while his application was pending before Judge Rast and the BIA because at those times he was incarcerated in an INS detention facility in Colorado, was unable to support the cost of long-distance telecommunications, and was represented only by student counsel. Therefore, Petitioner need not produce corroboratory evidence to meet his burden of proving past persecution on account of his membership in SICAFE, provided his testimony was credible.
 
 
 21
 Nevertheless, Petitioner, who has obtained pro bono counsel for proceedings before this Court, has recently acquired documentary evidence which corroborates his claim that he was detained and beaten on account of his involvement with SICAFE. A court may stay a petitioner's appeal and remand to the BIA to consider the petitioner's motion to reopen his or her case and to present new evidence, provided the evidence is material and was unavailable at the time of the petitioner's BIA hearing. Becerra-Jimenez v. INS, 829 F.2d 996, 1000-01 (10th Cir.1987). Petitioner has established that the new evidence he seeks to present is material and was unavailable to him at the time of his BIA hearing and he is therefore entitled to the relief Becerra-Jimenez affords. However, we need not resort to the procedural mechanism described in Becerra-Jimenez in view of our holding, supra, that Petitioner's case is to be remanded on the issue of Petitioner's credibility. Thus, the Court holds that on remand the BIA should also consider Petitioner's material, previously unavailable, corroboratory evidence, insofar as it bears upon Petitioner's credibility.
 
 
 22
 Finally, the BIA did not address whether the evidence established that conditions in El Salvador have "changed to such an extent that it is no longer more likely than not that the applicant would be ... persecuted there." 8 C.F.R. Sec. 208.16(b)(2). However, Judge Rast appears to have relied at least partially on this rationale in denying Petitioner's application for withholding of deportation. See Matter of Velis, Oral Decision of Immigration Judge at 9. If the BIA on remand finds that Petitioner's testimony was credible and thus that Petitioner has suffered past persecution on account of his SICAFE membership, the BIA should then determine whether conditions in El Salvador have so changed that should Petitioner return, it is no longer more likely than not that he would be persecuted there.
 
 
 23
 REVERSED AND REMANDED to the United States Board of Immigration Appeals for further consideration in accordance with this Order and Judgment.
 
 
 
 *
 The Honorable Juan G. Burciaga, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments. Nevertheless, an order and judgment may be cited under the terms and conditions of the Court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The tenuous "at random" theory becomes even less likely in view of the persecution that numerous of Petitioner's family members, also involved in SICAFE, suffered. See Hernandez-Ortiz, 777 F.2d at 516-17 ("Here, numerous incidents were all directed at members of the same family.... [T]he inference that they were connected and politically motivated is an appropriate one.")