NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0786n.06

Case No. 15-3201

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 03, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| VASIL SABOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| LORETTA E. LYNCH, U.S. Attorney | ) | APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: DAUGHTREY, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. Petitioner Vasil Sabov, a native and citizen of Ukraine, seeks reversal of the Board of Immigration Appeals' (BIA) denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He also challenges the BIA's denial of his motion to remand to the Immigration Judge (IJ). We deny Sabov's petition for review.

I.

Sabov left Ukraine for the United States after a series of alleged confrontations related to his Pentecostal faith. He testified that after he was drafted into the Soviet Army in 1976, his fellow soldiers beat him when they discovered his religion. Sabov further contends that nationalist groups attacked his church on three occasions: in January and December 1994 and

again in April 1997. The same nationalist groups attempted to extort money from Sabov at work, beating him when he refused to pay. Finally, he claims that in April 1999 a group of nationalists assaulted him in the street.

Sabov entered the United States in December 1999 on a non-immigrant visa. When that visa expired in 2000, Sabov applied for asylum, withholding of removal, and CAT protection. Due to several discrepancies in Sabov's testimony and the lack of corroborating evidence, the IJ denied his application. The BIA affirmed, and Sabov now petitions for review.

## II.

"Where the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal." *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006) (quoting *Gilaj v. Gonzales*, 408 F.3d 275, 282–83 (6th Cir. 2005)). We review the IJ's factual findings—including credibility determinations—under a deferential substantial-evidence standard, treating them as conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)).

For asylum eligibility, Sabov needed to establish that he suffered past persecution or had a well-founded fear of future persecution. *Guang Run Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (citing 8 U.S.C. § 1101(a)(42)(A)). More stringent standards govern withholding of removal under the Immigration and Naturalization Act (INA), 8 U.S.C. § 1231(b)(3), and under the CAT. To establish eligibility for withholding of removal under the INA, Sabov had to show a clear probability of persecution on the basis of one of the five grounds necessary for asylum eligibility. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006). To establish eligibility

for withholding of removal under the CAT, Sabov was required to establish that it is more likely than not that he would be tortured if removed to Ukraine. *Id.*

Because Sabov petitioned for asylum before May 11, 2005, the pre-REAL ID Act standards for credibility determinations control. *Koulibaly*, 541 F.3d at 620 n.2. Accordingly, the IJ needed to assess credibility on "issues that go to the heart of the applicant's claim," not on minor or irrelevant inconsistencies. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). Indeed, "if discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Shkabari v. Gonzales*, 427 F.3d 324, 329 (6th Cir. 2005) (quoting *Sylla*, 388 F.3d at 926).

At the removal proceeding, Sabov testified and submitted to cross-examination. He also offered his written statement, a letter from a Pentecostal church in Ohio vouching for his attendance since 2007, a letter from his current employer, and his birth certificate. The IJ found his testimony not credible as a result of a number of telling inconsistencies and a lack of corroborating evidence.

Here are the discrepancies. *First*, Sabov inconsistently testified about injuries he received at the hands of his fellow soldiers, initially claiming that he suffered a broken nose, a broken collarbone, and two broken ribs. Later, however, he admitted that his ribs were never broken. *Second*, in his written personal statement, Sabov described the January 1994 attack on his church as a "real slaughter," as the nationalists "beat all of us including kids and elderly with metal rods and chains." But while testifying, he admitted that "nothing happened to him" during that episode beyond "a bruise or so" and that his children—although present at the church—were unharmed. *Third*, Sabov testified inconsistently about the number of times the various attacks landed him in the hospital. He contended that he was hospitalized after the assault in the army,

and after the December 1994 church attack. He further explained that he went "to the hospital" after the April 1999 street beating. But when the IJ asked Sabov "[h]ow many times were you hospitalized in Ukraine," Sabov stated only once, in December 1994. These discrepancies go to the heart of Sabov's asylum claim—religiously motivated attacks—and do not compel reversal of the IJ's credibility finding.

More importantly, we share the IJ's skepticism in view of the absence of corroborating evidence. "[W]here it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided . . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet [his] burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quoting *In re S-M-J-*, 21 I. & N. Dec. 722, 724–26 (BIA 1997)). Corroborating evidence is required only if it "is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *Id.* at 383.

Sabov provided no independent proof of the attacks either through letters from witnesses or by way of medical records. When the IJ inquired about this failure, Sabov insisted that "nobody would give [him] anything like that" but admitted that he never *asked* anyone to submit a statement. He alleged that his daughter—who still resides in Ukraine—requested medical documents from the hospital but was rebuffed. Nevertheless, Sabov never attempted to personally contact the hospital. Most significantly, he presented no corroborating evidence of his membership in any Pentecostal group in Ukraine. When the IJ asked why this evidence was missing, Sabov replied that he did not realize he needed to submit such proof.

In the end, Sabov's explanation to the IJ for his failure to obtain corroborating evidence fell short. *See Dorosh*, 398 F.3d at 383 (corroborating evidence—such as letters from friends

and relatives in Ukraine—was reasonably expected and petitioner "offered no special circumstances to explain [its] absence"). And paired with the inconsistencies in his testimony, this lack of independent proof counsels against reversal.

Having failed to establish past persecution, Sabov enjoys no presumption of a well-founded fear of future persecution. *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). Accordingly, he must demonstrate that he "actually fear[s] that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.* at 389 (quoting *Perkovic v. INS*, 33 F.3d 615, 620–21 (6th Cir. 1994)). Furthermore, he must show the unreasonableness of safe relocation in Ukraine. 8 C.F.R. § 208.13(b)(2)(ii), (3)(i).

Sabov's testimony that "things remain the same" in Ukraine and that if he returned "[t]hey might kill [him]," offers little in proving an objective fear of future persecution, let alone obviating internal relocation as a reasonable option. And our review of the 2011 U.S. Department of State International Religious Freedom Report—relied on by the IJ—does not compel a different outcome.

Sabov failed to establish asylum eligibility. He also failed to establish eligibility for withholding of removal under the INA by showing a clear probability of persecution. *Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006). As to CAT protection, the IJ and the BIA held that Sabov failed to demonstrate that he would more likely than not be subject to torture upon returning to Ukraine. No evidence warrants our disagreement with that decision. *See Koulibaly*, 541 F.3d at 619 (courts assess claims of CAT protection under the same deferential standard as asylum claims).

III.

Sabov also challenges the BIA's denial of his motion to remand. In this motion, Sabov protested that in considering his claim of a well-founded fear of future persecution, the IJ did not consider the 2011 Department of State Country Report on Human Rights Practices in Ukraine. Sabov thus requested that the BIA "remand this case to the [IJ] for further proceedings to allow parties in this case to introduce evidence regarding country conditions in Ukraine." In the alternative, Sabov asked the BIA to take administrative notice of the Human Rights Report.

The BIA refused to remand absent a showing that the Human Rights Report "was not available and could not have been discovered or presented at the former hearing." On appeal, Sabov contends that the BIA abused its discretion because it erroneously treated his motion to remand as a motion to reopen (instead of a motion to reconsider) and thus applied an incorrect legal standard.

If filed during the pendency of a BIA appeal, a motion to reconsider or a motion to reopen may be styled as a motion to remand. *In re L-V-K-*, 22 I. & N. Dec. 976, 978–79 (BIA 1999); *In re Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992). A motion to reconsider contemplates the existing record, alleging "errors in appraising the facts and the law." *In re Cerna*, 20 I. & N. Dec. 399, 402 (BIA 1991); s*ee also* Board of Immigration Appeals Practice Manual Ch. 5.7(a). A motion to reopen, on the other hand, requests the opportunity to supplement the record with evidence that is "material and was not available and could not have been discovered or presented at the former hearing." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting 8 C.F.R. § 1003.2(c)(1)). We review the BIA's denial of a motion to remand for abuse of discretion. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006).

Although Sabov complains that his motion to remand was "in its essence a motion to reconsider," the relief requested belies that argument. Because Sabov asked to submit evidence that was not made part of the record—the Human Rights Report—the BIA justifiably treated this request as a motion to reopen.

And the BIA did not abuse its discretion in denying the motion. There was some confusion regarding whether the IJ ever received the Human Rights Report from the government. At the asylum hearing, the government inquired whether the IJ planned to take notice of the most recent Country Report, the Religious Freedom Report and the Human Rights Report. The IJ responded that he had a copy of the Religious Freedom Report and asked whether the government had a copy of the Country Report. The government responded that it did not but would obtain a copy during a break, presumably to enter it in the record or provide it to the IJ. It appears that did not happen, and the Country Report was not made part of the record.

Sabov argues that the IJ committed reversible error by omitting the Human Rights Report from the record. But the authority he draws from concerns reliance on a report that was not in the record, *see e.g. In re S-M-J-*, 21 I. & N. Dec. at 731–33, or failure to consider a report that was in the record. *See e.g. Mostafa v. Ashcroft*, 395 F.3d 622, 625–26 (6th Cir. 2005). Here, the IJ considered the country reports in the record and no others, and thus those cases lend Sabov no support. Accordingly, the denial of Sabov's motion to remand fell comfortably within the BIA's discretion. In any event, the 2011 Ukraine Country Report, a copy of which Sabov attached to his motion to remand, in a section titled "Freedom of Religion," states only: "See the Department of State's International Religious Freedom Report at www.state.gov/j/drl/irf/rpt/." The Religious Freedom Report was made part of the record.

IV.

Finally, Sabov claims that the IJ denied him due process by not providing him with an opportunity to review and rebut the country reports, by misrepresenting information in the Religious Freedom Report, and by failing to consider and not making part of the record the Human Rights Report. But because he never presented these arguments to the BIA as due process claims, we lack jurisdiction to review them. *Ramani v. Ashcroft*, 378 F.3d 554, 558–60 (6th Cir. 2004) ("[A] failure to exhaust administrative remedies with regard to [a particular] question . . . depriv[es] a court of appeals of jurisdiction to consider that question" (quoting *Chung Young Chew v. Boyd*, 309 F.2d 857, 861 (9th Cir. 1962)). And although Sabov asserted a due process claim regarding the IJ's failure to consider his hand scar, he abandons that argument before this court.

Accordingly, we deny Sabov's petition for review.