## NATURE'S RIVAL CO. v. VENUS BRASSIERE CO.

District Court, N. D. Illinois, E. D.  June 7, 1926.

No. 3988.

**Patents 328—1,486,779, relating to girdle brassieres, held valid and infringed.**

Patent No. 1,486,779, relating to garments such as girdle brassieres, issued to Mayer March 11, 1924, *held* valid and infringed.

In Equity. Patent infringement suit by the Nature's Rival Company against the Venus Brassiere Company. Interlocutory decree for plaintiff in accordance with opinion.

Emery, Booth, Janney & Varney, of Chicago, Ill., for plaintiff.

Banning & Banning, of Chicago, Ill., for defendant.

LUSE, District Judge. This is the usual suit in equity to enjoin the defendant from infringing the Mayer patent, applied for March 17, 1922, and issued March 11, 1924, No. 1,486,779.

The only issue left in the case is whether the Mayer patent is valid, it being apparent on inspection that defendant's garments Nos. 705, 735, and 757 are practically copies of the patented garment. It is thought unnecessary to deal in detail with the large number of patents offered in evidence by the defendant, or the garments disclosed in the various publications likewise in evidence. All have had careful consideration, down to and including the garments disclosed in the catalogue of the Sears-Roebuck Company, published in January of 1920. There are some publications subsequent to September 13, 1920, the date when the first Mayer garment was completed, which have been excluded from consideration.

In Mayer's specifications he says: "This invention relates to garments such as girdle-brassieres and the like"—thus recognizing the prior existence in the trade of garments which combined the girdle and the brassiere, and inasmuch as such combination is plainly indicated by Prince, No. 1,212,677, January

16, 1917, and Harmon, No. 454,167, June 16, 1891, there can be no valid claim of invention in combining the two articles of apparel, formerly known as a girdle and a brassiere, respectively. In view, also, of the French patent to Audiard, No. 472,098, dated November 20, 1914, which discloses a brassiere with elastic webbing at the sides, and independent fastening means, also at the side, there can be no valid claim of invention with respect to the brassiere portion of the Mayer garment. The invention, if any there is, must be found in the girdle portion of the garment. The elements which, in combination, make up the Mayer girdle, are: A closed front abdominal section, with boning (if desired); a closed back section, with boning; side elastic inserts, so arranged and constructed as to conform to the contour of the hips, and a side opening, fastened together when in use by individual fastening means. All of these elements were known to the prior art, and had been used in various garments, with the possible exception of the arrangement of the elastic webbing, so as to conform to the contour of the natural figure.

The use of elastic inserts running from the top to the bottom of the girdle and overlying the hips, in the prior art, is illustrated by the new R. & G. model disclosed in the publication, Women's and Infants' Furnisher, of September, 1918, and the Sears-Roebuck Company garments Nos. 18V118, 18V-110, and 18V111, disclosed in the catalogue of that concern published in January of 1920, as well as in the patented garments, Drewry, No. 237,503; Florsheim, No. 238,100; Nettleton, No. 242,679; Downs, No. 244,385; Warren, No. 594,164; Regnier (French), No. 441,691; and Bernardon (French), No. 12,393. Closed front and rear sections are shown in the patents to Dalmas (French), No. 12,380; Drewry, No. 237,503; Rider, No. 1,188,205; Regnier (French), No. 441,691; Bernardon (French), No. 12,393; Also the Sears-Roebuck Company garments, Nos. 18V127 and 18V132. The group of patents last mentionel also disclosed garments having openings at the side, or nearly so, as do also McClain, No. 675,787, and Hodgkinson (British), No. 9,607.

While all of the elements of the Mayer patent are disclosed in the prior art, it is clear that they are not used in the same relationship, nor so combined as to give the result obtained by Mayer. They were all used in garments which effected more or less constriction and distortion of the form, while Mayer's garment adapts itself to the figure and preserves the form without distortion or

pressure—"stabilizes it," is complainant's counsel's phraseology.

It is apparent, from a study of the prior art, that gradually knowledge of the ill effects of the old hourglass form of corset, together with the increasing engagement by women in physical activities, was creating a demand for garments, whether undergarments or outer garments, less calculated to interfere with such activities. On the trial, the witness Marshall, called by the defense, testified that "the corset does not come first; the dress comes first. The dress controls the design of the corset; not the corset the dress." I am well satisfied that this is an accurate expression, and that about the time of the conception of the Mayer garment the style in female attire assumed the straight line, straight front vogue, and finally freed itself from the waist-line accentuating mode theretofore more or less prevalent. This left the corsetiere free to give his attention to the development of a garment which need not accentuate the waistline, but might merely conform to the natural figure, and, while providing a proper foundation upon which to drape the outer garment, might nevertheless be designed to permit substantially unimpeded movement.

To the contention of the complainant that Mayer was the first to conceive of a form-stabilizing garment, which should not constrict the body nor maintain undesirable pressure thereon, I am unable to accede; for the statement of the object of the Prince patent is a wholly accurate statement of what is now claimed for Mayer. However, the Prince patent was fully considered by the Patent Office prior to its issuing the Mayer patent. I incline to agree with the Patent Office that, so far as the patented art is concerned, there are distinctions between the Mayer and the Prince patent, warranting the issuance to Mayer. A more serious doubt arises in my mind from the existence of the "new R. & G. model" of September, 1918, and the Sears-Roebuck Company models of January, 1920, Nos. 18V118, 18V110 and 18V111.

What Mayer really did, when one has in mind the garments just mentioned, was to omit the lacings of the Sears-Roebuck Company models, lighten the fabric of the front and rear sections, omit or lighten (if desired) the boning, and place flexible fastening elements at the side in place of the stiff clasps at the front of the garment. Whether this involved invention, or mere mechanical skill, is a question about which I have considerable doubt. Whether the faculty used was inventive, or whether merely keen business foresight, enabling Mayer to foresee that the women would shortly demand a light corseting, which need only hold firm the natural figure, while allowing freedom of motion, and use old elements of the art of corsetry to that end, is one which has been seriously perplexing. But, while the elements were all old, they were used in a combination which was new, and attained a result which also was new, disregarding for the moment the results designed to be obtained by the Prince patent. To my mind, Mayer has obtained a better result than Prince. He has used less elastic, and the removal of the Prince webbing from the side front to cover the hips probably results in two improvements: It lessens discomforts from the heat of the webbing, and the bulging of the elastic, which would undoubtedly occur in the Prince garment when the wearer assumed a sitting posture. Hence I think it may be accurately said that Mayer's combination was new, and that the result was new, except for that aimed at by Prince, and as to Prince the new combination gave a better result.

Knowledge after the fact is always easy, and it now seems that Mayer's combination is quite obvious; but apparently it never occurred to anybody before him to do just that thing, and when Prince attempted to do it he devised a garment quite complicated to achieve the result. Moreover, in the years just previous to Mayer's conception, considerable groping by the trade is indicated by the all-elastic, or substantially all-elastic, garments designed, uncomfortable though they were, because of their excessive warmth. [1] As bearing upon whether the Mayer garment was devised in response to a prevailing mode of dress, we have the evidence indicating contrariwise, in that, when first introduced, the sales were negligible, but that, upon persevering in the line, but with moderate advertising, a tremendous commercial success has followed. Moreover, we have the element of a slavish imitation on the part of the defendant in the three models specified, indicating that it thinks very well indeed of the Mayer garment, and that is also persuasive of what the defendant thinks the world ought to think of the Mayer garment. All this leads me to the conclusion that the Mayer patent is valid and is infringed.

On the trial the suit was dismissed as to the individual defendants. On the opening of the trial defendant moved to limit the plaintiff's charges of infringement to the three garments hereinabove specified, on the ground of irresponsive answers to certain interrogatories propounded by the defendant.

It seems to me that the proper time to complain of such irresponsive answers, if such they were, was at the time of their coming in. But, laying aside this point, I do not see that there is any necessity of granting the motion. Plaintiff's evidence has been confined to proof of the three styles of garments indicated, so that for all purposes of the trial, contemplated under rule 58, it is not seen where the granting of the motion is now in order, and it is therefore denied.

Plaintiff's counsel may prepare an interlocutory decree in accordance with this opinion.