Jamshid IRAN, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 80–7560.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1981.

Decided Sept. 14, 1981.

As Amended on Denial of Rehearing
Dec. 7, 1981.

Gary Silbiger, Los Angeles, Cal., for petitioner.

Carolyn M. Reynolds, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

Before DUNIWAY and REINHARDT, Circuit Judges, and MARQUEZ,* District Judge.

REINHARDT, Circuit Judge.

Petitioner seeks review of a Board of Immigration Appeals (BIA) affirmance of an order of deportation. We reverse.

On December 31, 1979, an Order to Show Cause was issued charging that petitioner was a native and citizen of Iran who entered the United States on September 19, 1978 as a nonimmigrant visitor authorized to remain for a period of six months, and who remained beyond that period. A deportation hearing was held on March 26, 1980. The only evidence introduced at the hearing was two documents introduced by the Immigration and Naturalization Service (INS) and the Order to Show Cause. The INS submitted a purported Form I-506, "Application for Change of Nonimmigrant Status," filed with the INS on June 13, 1979,[1] and a purported letter from the Iranian Consulate General in San Francisco, dated June 5, 1970.[2] Based on this evidence, the

* Honorable Alfred C. Marquez, United States District Judge, District of Arizona, sitting by designation.

1. The form states, *inter alia*, that petitioner was a citizen of Iran, was authorized to stay in the United States until May 29, 1979, and was applying to have his status changed to that of nonimmigrant student.

2. The letter states that petitioner had reported the loss of his passport on May 24, 1979, and that it would take approximately six months to get a new Iranian passport.

immigration judge found petitioner deportable.[3] The BIA affirmed.[4]

In deportation proceedings, the INS has the burden of proving deportability by "clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 277, 87 S.Ct. 483, 484, 17 L.Ed.2d 362 (1966); 8 C.F.R. § 242.14(a). To prove deportability, the INS must show that the subject of the deportation proceeding is an alien who is deportable under the Immigration and Naturalization Act. As a part of its burden, therefore, the INS must prove "alienage," *i. e.*, that the subject of the proceeding is an alien. The evidence introduced by the INS at the hearing, if admissible, was clearly sufficient to meet this part of its burden.

In cases of illegal entry, once the INS establishes alienage the presumption raised by 8 U.S.C. § 1361 applies. *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980).[5] The subject of the immigration proceeding then has the burden of proving "the time, place and manner of his entry into the United States," and, if this burden is not met, the subject is presumed to be in the United States in violation of law and, therefore, deportable.[6] Since petitioner failed to submit any evidence at the hearing, if this were a case involving illegal entry he would be presumed to be in the United States in violation of law, and the INS would have met its burden of proving deportability by "clear, unequivocal, and convincing evidence." The presumption raised by section

1361 does not operate, however, in cases like petitioner's, in which the charge is that the alien remained beyond the time authorized, or, more generally, in cases not involving illegal entry. C. Gordon and H. Rosenfield, *Immigration Law and Procedure* (1981), § 5.10b at 5–119. While section 1361, by its own terms, applies to "any deportation proceeding," and, if read literally, could be applied in *all* deportation proceedings, it must be read, for the following reasons, to apply only in deportation proceedings which involve illegal entry.

First, there would be no legitimate reason to require proof on the issue of illegal entry in cases not involving that issue. Second, it is apparent that section 1361 was not intended to be an independent source of substantive law. Rather, it was intended to create a procedural rule modifying the allocation of proof on the issue of illegal entry. If section 1361 were applied in all deportation cases, it would provide a substantive basis for deportability in cases which do not otherwise involve the question of illegal entry. Third, the application of section 1361 in cases in which illegal entry is not an element of the charge of deportability would raise a serious constitutional question. In this circuit, "[d]eportation on a charge not presented in the order to show cause, or at the hearing ... offend[s] due process. *Hirsch v. Immigration and Naturalization Service*, 308 F.2d 562, 566 (9th Cir. 1962)." *Whetstone v. INS*, 561 F.2d 1303, 1306 (9th Cir. 1977). If section 1361

3. In addition, at the deportation hearing, petitioner was asked questions, by the immigration judge, about the authenticity of the Form I-506. Petitioner refused to answer, claiming the fifth amendment privilege against self-incrimination. The immigration judge found that the petitioner mistakenly invoked the fifth amendment privilege and ordered him to answer. Petitioner again refused, and the immigration judge inferred from petitioner's silence that the content of the Form I-506 was true.

4. The BIA affirmed, but did not rely on an inference from petitioner's silence. We do not decide whether the immigration judge was entitled to rely on the inference.

5. In *Navia-Duran v. INS*, 568 F.2d 803, 811 (1st Cir. 1977), the First Circuit held that the presumption raised by section 1361 applies only

after the INS proves its *prima facie* case, *i. e.*, that the subject of the deportation proceeding is an alien who is deportable under the Act. While there is considerable merit to the analysis set forth in *Navia-Duran*, the rule in this circuit is different.

6. Section 1361 provides, *inter alia* :

In any deportation proceeding under Part V of this subchapter against any person, the burden of proof shall be upon such person to show the time, place and manner of his entry into the United States. . . . If such burden of proof is not sustained, such person shall be presumed to be in the United States in violation of law.

were applied in such cases, and the person who is the subject of the proceedings failed to meet his or her burden, that person would be deportable on the ground of illegal entry, a ground not charged. Thus, section 1361 must be construed to apply only in those cases in which illegal entry is charged, *i. e.*, those cases in which illegal entry is at issue.

▇ In summary, section 1361 was intended only to modify the allocation of proof on the issue of illegal entry and was intended to apply only in cases where illegal entry is at issue. It is not applicable in overstay cases or other deportation proceedings where illegal entry is not a proper part of the charge. Accordingly, we are required to look to the evidence introduced at the hearing rather than to the statutory presumption in order to determine whether the INS has established under the "clear, unequivocal, and convincing evidence" standard, that petitioner was not authorized to remain in the United States.[7]

The purported Form I–506 introduced by the INS shows that a Jamshid Iran was granted a visa which permitted him to stay in the United States until May 29, 1979, but that he filed a change of status application so that he might remain in the country for an additional period and continue his education. Petitioner contends that the fact that an individual with an identical name may have filed a Form I–506 does not, without further evidence, establish that he is the person who filed the application. He argues that the identity of names does not meet the "clear, unequivocal, and convincing" proof standard. We have recently held that identity of names on a duly authenticated foreign birth certificate is sufficient to establish alienage. *Corona-Palomera v. Immigration and Naturalization Service*, 661 F.2d 814 (9th Cir. Nov. 19, 1981). However, as we explain below, the Form I–506, which established the identity of names in this case was not properly admitted into evidence and thus may not serve as the basis for the order of deportation.

In addition to contending that the evidence introduced by the INS was insufficient to prove deportability by "clear, unequivocal, and convincing evidence," petitioner argues that the Form I-506 was improperly admitted because it was not authenticated. The INS asserts that authentication is not required in deportation proceedings; alternatively, it argues that, if authentication is required, the form was properly authenticated.

▇ The INS' contention that authentication is not required in a deportation hearing is erroneous. While there is some doubt as to which methods of proof are acceptable in such proceedings, there is no question that authentication is necessary. *Chung Young Chew v. [Boyd] INS*, 309 F.2d 857, 866–67 (9th Cir. 1962). Whatever confusion exists concerning the authentication requirement may arise because we have not attempted to set forth all of the approved methods for authenticating writings in deportation hearings.[8] It is clear, however, that whatever method is used must, at a minimum, satisfy due process. *Cf. Trias-Hernandez v. INS*, 528 F.2d 366, 370 (9th Cir. 1975); *Longoria-Castenada v. INS*, 548 F.2d 233, 236 (8th Cir. 1977).

---

**7.** As noted, *ante*, that evidence consists of a Form I-506 and a letter from the Iranian Consulate. The letter does not serve to prove, in any way, that petitioner was not authorized to remain in the United States. It indicates only that petitioner lost his passport and sought to obtain a replacement.

**8.** 8 C.F.R. § 287.6 provides one, but not the exclusive, method for establishing a sufficient basis for admission of a writing in a deportation proceeding. *Hoonsilapa v. INS*, 575 F.2d 735, 738 (9th Cir. 1978). Additionally, the method set forth in Rule 44, Federal Rules of Civil Procedure, 28 U.S.C., or any procedure that comports with common law rules of evidence constitutes an acceptable level of proof. *Chung Young Chew v. INS*, 309 F.2d at 866–67. *Hoonsilapa* and *Chung Young Chew* neither authorize, nor preclude, the use of other methods, which may involve a different level of proof.

The INS' contention that the Form I-506 was properly authenticated is also erroneous. There is no evidence on the record that the form was completed by petitioner, that the form was not altered after it was completed, that the form contains information provided by the petitioner, or even that the form constitutes part of his INS file. After the trial attorney handed the document to the immigration judge and told him what it purported to be, the immigration judge stated, in effect, that no proof of authentication was necessary. As a result, the INS failed to introduce any proof of authenticity, or any proof from which the immigration judge could infer that the form was a true document.[9] The INS argues that the fact that the name on the form is the same as the name on the Order to Show Cause provides all the proof necessary to authenticate the document. We recognize that proof of such an identity of names, absent any contrary evidence, is sufficient to prove that the petitioner is the person that the form relates to; under such circumstances the proof suffices for purposes of identification. It does not, however, serve to authenticate the form. *Chung Young Chew v. INS*, 309 F.2d 857 (9th Cir. 1962). To authenticate the form, there must be proof that the form is what is purports to be, *i. e.*, an authentic "Application for Change of Nonimmigrant Status" form containing information provided by the petitioner. Accordingly, we hold that the admission of the Form I-506 was inconsistent with the requirement of authentication in deportation proceedings, and was improper.[10]

In conclusion, the evidence submitted by the INS was not properly admitted. Thus, the INS did not meet its burden of establishing deportability by "clear, unequivocal, and convincing evidence."

The order of deportation is set aside and the case is remanded to the INS for further proceedings consistent with this opinion.

**9.** As mentioned in note 3, *ante*, the petitioner refused to answer questions that, if answered, might have authenticated the form. [The INS does not argue, however, that the authenticity of the form may be inferred from the petitioner's silence.] Moreover, the BIA did not rely on such an inference in reaching its decision. Ac-

cordingly, we do not decide the issue whether such an inference would be appropriate.

**10.** The INS also failed to submit any proof of the authenticity of the letter from the Iranian Consulate. For the same reasons that admission of the Form I-506 was improper, admission of the letter was improper.