**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARLON ALONZO SMITH,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 22-954

Agency No.
A036-706-804

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 17, 2023
San Francisco, California

Filed June 3, 2024

Before: Carlos T. Bea, Morgan Christen, and Anthony D.
Johnstone, Circuit Judges.

Opinion by Judge Christen;
Dissent by Judge Johnstone

# SUMMARY[*]

## Immigration

Denying Marlon Alonzo Smith's petition for review of a decision of the Board of Immigration Appeals, the panel exercised its discretion to consider an argument that the Government raised for the first time during oral argument; concluded that Smith failed to preserve his challenge to the authenticity of the three documents that the agency relied on in finding him removable; rejected Smith's due process arguments; and concluded that substantial evidence supported the denial of relief under the Convention Against Torture (CAT).

Smith was found removable as an alien convicted of an aggravated felony. Before this court, Smith challenged the authenticity and reliability of the three documents the agency relied upon for its removability ruling: 1) a Form I-213, Record of Deportable Alien; 2) an FBI rap sheet; and 3) a criminal judgment.

The panel wrote that authentication is required in immigration proceedings but observed that these documents were not authenticated by any method. Smith argued that an amendment to 8 C.F.R. § 287.6(a) made mandatory a requirement that domestic official records be authenticated "by an official publication thereof or by a copy attested by the official having legal custody of the record . . ." The panel concluded that it need not resolve this issue because Smith had not preserved his challenge to the authenticity of three

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the Government's exhibits, and they sufficed to establish his removability.

With respect to the judgment of conviction—which the Government offered to prove that Smith had a prior aggravated felony—the panel concluded that Smith had failed to exhaust his challenge to the authenticity of this document, where he did not object to its admission before the IJ, and did not contest before the BIA that the document established the conviction.

With respect to the Form I-213 and the rap sheet—which the BIA found to have satisfied the Government's burden to prove alienage—the panel concluded that Smith had also failed to preserve his challenge to the authenticity of these documents. Exercising its discretion to consider the Government's exhaustion argument, raised for the first time at oral argument, the panel explained that although Smith argued before the agency that the documents contained errors or were unreliable, he did not challenge their authenticity. Construing Smith's objection to these documents as due process challenges to their reliability, the panel concluded that the BIA did not err.

Finally, the panel concluded that substantial evidence supported the denial of CAT protection. The panel explained that: 1) there was no indication that the IJ ignored highly probative or potentially dipositive evidence about mental healthcare and related policing issues in Guyana; 2) the IJ correctly evaluated Smith's risk of torture from each source he raised (mental health problems, race, and status as a deportee with prior convictions); and 3) the record included evidence that the Guyanese government is attempting to combat violence in psychiatric institutions, which does not support a finding that Guyanese officials will

acquiesce to violence by psychiatric inmates even if those measures have been unsuccessful to date.

Dissenting, Judge Johnstone wrote that the Department of Homeland Security failed to prove Smith's removability by clear and convincing evidence. The Department did not authenticate the only evidence that established Smith's alienage, Smith objected to the admission of that evidence, and the Government forfeited any challenge to the sufficiency of Smith's objection. Judge Johnstone would grant the petition to hold the Government to its burden of proof.

## COUNSEL

Evangeline G. Abriel (argued), Supervising Counsel; Safwan Siddiqi and Janelle Barbier (argued), Student Counsel; Santa Clara University School of Law, Santa Clara, California; for Petitioner.

Robert P. Coleman, III, (argued), Trial Attorney; Jennifer Levings, Assistant Director; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C.; for Respondent.

# OPINION

CHRISTEN, Circuit Judge:

Marlon Alonzo Smith, a native and citizen of Guyana, petitions for review of the Board of Immigration Appeals' (BIA) order finding him removable and denying his application for protection under the Convention Against Torture (CAT). Smith argues that the BIA erred by affirming the Immigration Judge's (IJ) decision to admit unauthenticated and unreliable documents the Government proffered to prove his removability, but he failed to preserve most of his authentication challenges and the record supports the BIA's ruling that the documents were reliable. Substantial evidence also supports the decision to deny Smith's CAT claim. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition.

## I. BACKGROUND

Smith entered the United States as a lawful permanent resident in 1982 when he was a child. In 2018, Smith was convicted of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and sentenced to 180 months imprisonment. Smith is scheduled to be released from prison in 2028. The Department of Homeland Security served Smith with a Notice to Appear in 2021 charging him with being removable as an alien convicted of an aggravated felony. At the first immigration hearing after he obtained counsel, Smith denied removability and held the Government to its burden to prove that he was removable. The IJ granted a continuance to allow the Government time to obtain supporting documentation.

At the continued hearing, the Government proffered four documents to prove Smith's removability: (1) a search result printout from a U.S. Citizenship and Immigration Services (USCIS) database to prove alienage; (2) an FBI rap sheet to prove alienage and Smith's prior felony conviction[1]; (3) a judgment downloaded from PACER to establish Smith's 2018 conviction[2]; and (4) a Form I-213, Record of a Deportable Alien, memorializing an immigration officer's interview of Smith, proffered to prove Smith's alienage and prior conviction.[3] The Government compiled these four documents into two exhibits. We refer to each document as a separate exhibit for clarity. The Government did not present live witness testimony to introduce the exhibits and did not attempt to authenticate the rap sheet or the Form I-213 by any method.

Smith's counsel objected to the admission of the USCIS printout because it did not comply with 8 C.F.R. § 287.6; she objected to the rap sheet as "unreliable" to prove alienage because one part of it stated that Smith was born in Wisconsin and another part stated that his place of birth was Guyana; and she objected to the Form I-213 because it "did

---

[1] The rap sheet collated records of Smith's arrests and prosecutions from the FBI's internal database and from California and Utah.

[2] The downloaded file was accompanied by a declaration signed by an immigration officer declaring that the exhibit was "a true and correct copy of the original records contained in PACER (Public Access to Court Electronic Records), the federal court's electronic records repository."

[3] A Form I-213 is "a recorded recollection of a[n INS agent's] conversation with the alien" which "border agents routinely complete after interviewing aliens." *Espinoza v. INS*, 45 F.3d 308, 310 & n.1 (9th Cir. 1995) (alteration in original) (quoting *Bustos-Torres v. INS*, 898 F.2d 1053, 1056 (5th Cir. 1990)).

not state a reliable source" for its contents.  The Government responded to Smith's reliability argument about the I-213's contents by contending that the form was "inherently trust-worthy" and did not "contain information which isn't correct or was obtained by coercion."     After hearing the Government's response that the documents were "kept in the ordinary course of business" and were inherently trustworthy, the IJ admitted the exhibits.  The IJ did not address Smith's specific objections, but ruled on record that the exhibits met the Government's burden to prove that Smith was removable.

With removability established, Smith applied for asylum,[4] withholding of removal,[5] and protection under CAT,[6] and another merits hearing was held to consider those applications.  The second hearing was held before a different IJ.  As part of those applications and in his sworn testimony in support of them, Smith represented under penalty of perjury that he had been born in Guyana and was a citizen of Guyana.  Smith also submitted sworn declarations from his mother and brother stating that Smith was born in Guyana.

Smith's counsel renewed her objection "to the contents of the 213" due to "some inaccuracies" and because Smith "stated that he had never encountered an ICE [agent] during the interview."   Counsel also objected to the rap sheet because it was internally inconsistent regarding Smith's birthplace and therefore, counsel argued, it failed to support the Government's burden to show that Smith was an alien. The IJ again overruled Smith's objections without revisiting

---

[4] 8 U.S.C. § 1158(b)(1).

[5] 8 U.S.C. § 1231(b)(3).

[6] 8 C.F.R. §§ 1208.16–1208.18.

the previous IJ's removability ruling, but told Smith that if he felt the removability ruling was in error, he could "file a written brief on it." Smith did not take up this offer.

The IJ went on to find Smith credible, concluded that he was ineligible for asylum and withholding of removal due to his aggravated felony conviction, and also concluded that he had not met his burden to show he was entitled to CAT relief. The IJ's written decision noted that the Government's exhibits were admitted because they were "probative and their admission [was] fundamentally fair." Smith appealed to the BIA. The BIA adopted and affirmed the IJ's decision by citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), and also added its own reasoning. The BIA ruled that the Form I-213 and the rap sheet were admissible and satisfied the Government's burden to prove alienage and noted that Smith did not deny that the criminal judgment adequately established his prior conviction for an aggravated felony. Smith timely petitioned for review.

## II.  STANDARD OF REVIEW

While we generally lack jurisdiction to review a final order of removal premised on an aggravated felony conviction, 8 U.S.C. § 1242(a)(2)(C), we retain jurisdiction over "constitutional claims or questions of law," *id.* § 1242(a)(2)(D). "Where, as here, the BIA cites *Burbano* and also provides its own review of the evidence and law, we review both the IJ's and the BIA's decisions." *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011). We review legal conclusions de novo and factual findings for substantial evidence. *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022).

## III.  DISCUSSION

Smith argues the BIA erred by affirming the IJ's decision to admit the evidence the Government proffered to establish his removability because the exhibits were unauthenticated. He also argues the exhibits were unreliable and that their admission violated his right to due process.  Separately, Smith argues that the agency erred in denying his CAT claim.  We address each issue in turn.

### A.  Proof of removability

The Government bears the burden of establishing removability by "clear, unequivocal, and convincing evidence."  *Mondaca-Vega v. Lynch*, 808 F.3d 413, 419 (9th Cir. 2015) (en banc) (quoting *Chau v. INS*, 247 F.3d 1026, 1029 n.5 (9th Cir. 2001)).  Here, the Government was required to prove that Smith was an alien and that he had a conviction that qualifies as an aggravated felony.  *See* 8 U.S.C. § 1229a(c)(3); 8 U.S.C. § 1227(a)(2)(A)(iii).  There is no question that authentication of documents is required in immigration proceedings, *Iran v. INS*, 656 F.2d 469, 472 (9th Cir. 1981), but three of the four exhibits that the Government proffered to prove Smith's removability were not authenticated by any method.  The Government proffered the USCIS search result printout, the Form I-213, and Smith's rap sheet to prove that he was an alien.  It proffered Smith's criminal judgment, the rap sheet, and the Form I-213 to prove his qualifying conviction.  The IJ admitted all four of the challenged exhibits over Smith's objections.  The BIA affirmed the IJ's rulings admitting the Form I-213, the rap sheet, and the criminal judgment.

In his petition for review to our court, Smith challenges the authenticity and reliability of the three exhibits that the agency relied on for its removability ruling: the Form I-213,

the rap sheet, and the criminal judgment.  The Government first responds that authentication is not required in immigration proceedings and that "the sole test . . . is whether the evidence is probative and its admission is fundamentally fair."  This is incorrect.  As we have held for over four decades, the "contention that authentication is not required in a deportation hearing is erroneous. . . . [T]here is no question that authentication is necessary."  *Id.* at 472.  That said, "we have not attempted to set forth all of the approved methods for authenticating writings in deportation hearings," *id.*, and we have "require[d] only that immigration forms be authenticated through some recognized procedure," *Espinoza*, 45 F.3d at 309.

Smith argues that, contrary to the permissive standard we have articulated, the agency must authenticate domestic official records as specified in 8 C.F.R. § 287.6(a).[7]  Section 287.6 consists of four subsections: subsection (a) addresses authentication of domestic official records, while subsections (b)–(d) address authentication of foreign official records.  When it was originally promulgated in 1965, § 287.6 provided that domestic official records "*may* be evidenced by an official publication thereof or by a copy attested by the official having legal custody of the record or by his deputy."  30 Fed. Reg. 12248 (Sept. 24, 1965) (emphasis added).  But as Smith correctly argues, § 287.6 was amended in 1985 and the operative text of § 287.6(a), the subsection governing domestic official records, was

---

[7] 8 C.F.R. § 287.6 is identical to 8 C.F.R. § 1287.6, which applies to proceedings before the BIA.  For simplicity, we refer to § 287.6 but our analysis applies equally to proceedings before the BIA.

changed from "may" to "shall" at that time.[8]  50 Fed. Reg. 37834 (Sept. 18, 1985).  Thus, when Smith appeared before the IJ, § 287.6(a) provided that a domestic "official record or entry . . . *shall* be evidenced by an official publication thereof, or by a copy attested by the official having legal custody of the record or by an authorized deputy."  *Id.* (emphasis added).

Before the 1985 amendment, we held in two published opinions involving domestic official documents that § 287.6 is not binding.  The first was *Hoonsilapa v. INS*, where we held that § 287.6 "creates only a permissive authentication procedure."  575 F.2d 735, 738 (9th Cir. 1978).  Later, in *Iran v. INS*, we held that "§ 287.6 provides one, but not the exclusive, method for establishing a sufficient basis for admission of a writing in a deportation proceeding."  656 F.2d at 472 n.8 (citing *Hoonsilapa*, 575 F.2d at 738).  After the 1985 amendment, we have continued to hold that § 287.6 is not the exclusive means of authenticating official records, but we have done so by citing our pre-1985 cases and we have not expressly acknowledged the change in § 287.6(a)

---

[8] It appears that the impetus for these amendments was the need to comply with an international treaty, the Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents, Oct. 5, 1961, T.I.A.S. No. 10072, 527 U.N.T.S. 189 (Hague Apostille Convention).  50 Fed. Reg. 37834 (Sept. 18, 1985) ("This final rule revises the provisions for authentication of official records in order to conform existing requirements to the exceptions noted for signatories of the [Hague Apostille Convention].").  The agency summarized the changes as "relating to the admissibility of official records of foreign public documents" and invoked an exemption to the public notice and comment requirements applicable to changes "relate[d] to foreign affairs functions of the United States."  *Id.*

from "may" to "shall."  *See Espinoza*, 45 F.3d at 309–10 (citing *Iran*, 656 F.2d at 472).[9]

The Government's position on § 287.6's seemingly mandatory language has been inconsistent.  In 2000, the Government asserted in the brief it filed in *Khan* that the word "shall" is binding: "§ 287.6 clearly states that a foreign public record 'shall be evidenced by an official publication thereof, or by a copy attested by an officer so authorized.' . . . [T]here is no room for 'interpretation' of this regulation."  Respondent's Br. at *21 n.3, *Khan*, No. 99–71062, 2000 WL 33980913 (Jan. 11, 2000).  The Government's brief in this appeal cites *Espinoza* in support of its contention that the only standard for admission is that the document be probative and fundamentally fair, and that Smith has the burden of demonstrating that an official record contains errors.  *Espinoza* does not aid the Government's cause because there, a Form I-213 was certified according to the procedure in § 287.6(a), so neither the litigants nor the court had occasion to consider whether compliance with either of § 287.6(a)'s authentication procedures is mandatory.  *Espinoza* merely held that "information on an *authenticated* immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the

---

[9] We have repeated this pattern of citing our pre-amendment caselaw in appeals involving foreign documents, disregarding the regulation's mandatory language and instead noting fairness concerns: "[r]equiring an asylum petitioner to obtain a certification from the very government he claims has persecuted him or has failed to protect him from persecution would in some cases create an insuperable barrier to admission of authentic documents."  *Vatyan v. Mukasey*, 508 F.3d 1179, 1183 (9th Cir. 2007); *see also Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001) (per curiam) (quoting *Iran*, 656 F.2d at 472 n.8) (holding that § 287.6(b) is not mandatory for foreign official records).

alien." *Espinoza*, 45 F.3d at 310 (emphasis added). At oral argument before our court, the Government responded to Smith's authentication challenge by suggesting that the change in § 287.6(a) from "may" to "shall" might have been a mistake or that the amendment might not have signaled that the regulation is mandatory, particularly because the focus of the amendments seemed to be on the subsections addressing foreign documents.[10] In short, the Government urges us to continue to interpret "shall" to mean "may," as we did prior to the regulatory amendment.

We have not addressed the amendment to § 287.6(a) in a published opinion, but given the volume of immigration proceedings in this circuit and the Government's frequent use of domestic official records to prove removability, it will surely become necessary at some point to address definitively what effect the 1985 regulatory change had on the standard for authenticating domestic documents. We leave that analysis for another day, when we will hopefully have full briefing and the benefit of a robust adversarial debate. To review the BIA's decision, we need not resolve the issue because Smith did not preserve his challenge to the authentication of three of the Government's exhibits, and they sufficed to establish Smith's removability.

---

[10] Others have suggested that the change to the domestic records subsection of the regulation was an oversight. *See* Virgil Wiebe, *Maybe You Should, Yes You Must, No You Can't: Shifting Standards and Practices for Assuring Document Reliability in Asylum and Withholding of Removal Cases*, 06-11 Immigr. Briefings 1, at *19 (Nov. 2006) ("[T]he INS revision making apparently mandatory (as opposed to arguably permissive) the authentication rules for domestic official records . . . by changing the operative 'may' to 'shall' is inexplicable in light of other similar rules in the federal system.").

### 1.  Authentication challenge

Smith did not object to the authenticity of the judgment of conviction, which the Government offered to prove that Smith has a prior aggravated felony.  He did not object to its admission before the IJ and the BIA observed that Smith "does not contest that the record of conviction submitted by DHS establishes" his prior conviction for possession of methamphetamine with intent to distribute.  The Government argues in its brief that Smith's challenge to the authenticity of the criminal judgment is unexhausted.  We agree.  *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) (citing *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023)).

Smith did object to the authenticity of the USCIS printout before the IJ.  The IJ admitted that document in error because the Government failed to follow any "recognized procedure" for authenticating it.  *Espinoza*, 45 F.3d at 309 (citing *Iran*, 656 F.2d at 472).  But the IJ did not rely solely on the printout to find Smith removable, and the BIA did not rely on the USCIS printout at all.

The BIA affirmed the IJ's reliance on the Form I-213 to establish Smith's alienage and ruled that the IJ correctly considered the rap sheet for Smith's alienage and to establish his aggravated felony conviction.  Before our court, the Government argued that Smith failed to preserve his challenge to the authenticity of these exhibits for the first time at oral argument.[11]  We have discretion to consider the Government's argument.  *See Alonso-Juarez v. Garland*, 80

---

[11] The Government first argued that Smith had never made an authentication objection to the Form I-213 five minutes into its oral argument and repeated this position seven more times.

F.4th 1039, 1046 (9th Cir. 2023) (reaching an argument raised after the appeal was argued); *cf. United States v. Salman*, 792 F.3d 1087, 1090 (9th Cir. 2015) (recognizing good cause and lack of prejudice to the opposing party as exceptions permitting consideration of late-raised arguments, and noting lack of prejudice "where opponent had an opportunity to address the issue at oral argument" (citing *Ibarra–Flores v. Gonzales*, 439 F.3d 614, 619 n.4 (9th Cir. 2006))).  The dissent cites *United States v. Dreyer*, 804 F.3d 1266 (9th Cir. 2015) (en banc), but *Dreyer* supports the result we reach here.  In *Dreyer*, the government did not raise the exclusionary rule until its petition for rehearing en banc.  *Id.* at 1277.  We exercised our discretion to consider the government's argument, noting compelling reasons to do so and that the opposing party was not prejudiced because it had the opportunity to address the argument on appeal.  *Id.* at 1277 & n.5.

Here, we exercise our discretion because the merits of the Government's forfeiture argument turn on the fixed transcript before us; the question of forfeiture is a narrow one involving settled law; Smith's opening brief on appeal argued that he had exhausted his authentication challenges to both documents; and both parties addressed forfeiture at oral argument. **12**  We also consider that Smith did not challenge the authenticity of these documents to the IJ or the BIA; that the IJ gave Smith a second chance to contest removability in a written brief, where he could have expressly challenged the authenticity of the Form I-213 and rap sheet if that had been his intention; that Smith has never contested his Guyanese citizenship; and that Smith would be

---

[12] *Cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (explaining party presentation principle).

bound in any future proceeding by his subsequent sworn testimony that he was born in Guyana.[13]

We begin the forfeiture analysis with Smith's challenge to the Form I-213. At the hearing before the first IJ, Smith's counsel challenged the USCIS printout because "it does not comply with Regulation 8 C.F.R. 287.6." This squarely raised a challenge to the printout's authenticity. But Smith's counsel raised a different challenge to the Form I-213. She argued that it "did not state a reliable source of how [the asylum officer] obtained the evidence of respondent's deportability." Smith did not argue before the IJ that the Form I-213 failed to comply with § 287.6 or that it was otherwise unauthenticated. Smith similarly did not raise an authentication challenge to the Form I-213 before the BIA.

We have sometimes discussed "indicia of reliability" in the course of addressing authentication, *see Padilla-Martinez v. Holder*, 770 F.3d 825, 833 (9th Cir. 2014), but the need to authenticate challenged documents performs a distinct function. *See Espinoza*, 45 F.3d at 310 (separately analyzing authentication of a document and the reliability of a document's contents). "Authentication serves to establish a chain of custody for government records," *Id.* at 309, by showing that "the [evidence] is what i[t] purports to be," *Iran*, 656 F.2d at 473. Here, by arguing that the Form I-213 did not state a reliable source for its information, Smith contested the content of the Form I-213, not its authenticity. In other words, Smith did not question that the proffered exhibit was indeed the record of the asylum officer's interview and investigation. Rather, he questioned the weight that should be afforded to the exhibit because the

---

[13] Smith also introduced declarations from his mother and brother attesting that he was born in Guyana.

officer had not recorded the sources consulted to complete the form. The limited nature of Smith's objection was confirmed in the second IJ hearing, in which Smith contended for the first time that he had not spoken to an Immigration and Customs Enforcement agent, asserted that the Form I-213 had "some inaccuracies," and stated "[s]o we object to the contents of the 213." The IJ offered Smith an opportunity to file a written brief to revisit the removability finding, but he did not do so. In the brief he filed with the BIA, Smith devoted a paragraph to the argument that the USCIS printout was not authenticated, but his only mention of the Form I-213 came immediately after discussing the USCIS printout and it was limited to arguing that "[t]he form I-213 that the Department has developed relies on this information and should be excluded as well." Smith did not suggest that the Form I-213 was not what it purported to be; he argued it was inaccurate.

Smith similarly waived any challenge to the authenticity of the rap sheet. He argued to the IJ that it "fails to establish deportability because . . . there is indication that the respondent's birthplace is the state of Wisconsin," but he did not contest that the exhibit was the FBI's record of his criminal history. Smith repeated his objection to the rap sheet's reliability in the second IJ hearing, and he argued before the BIA that admission of the rap sheet was erroneous because it had conflicting information about his birthplace. Only on appeal, tucked into a footnote, did Smith mention the authentication of the rap sheet. "[A] cursory mention of an issue in a footnote" is insufficient for appellate consideration. *Momox-Caselis v. Donohue*, 987 F.3d 835, 842 (9th Cir. 2021). Even if we credit the footnote as sufficient to raise authentication of the rap sheet on appeal, Smith did not present this argument to the agency. He

therefore failed to preserve a challenge to the authenticity of the rap sheet.

## 2.  Due process challenges

Throughout the briefing and argument, both parties imprecisely differentiated between the authenticity of the Government's exhibits and the reliability of the Government's exhibits.  We construe the objections Smith did make, to the contents of the rap sheet and the Form I-213, as due process challenges because Smith argued before the IJ and the BIA that the Government's exhibits were unreliable.

In immigration proceedings, once a document is authenticated, "[t]he sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair." *Espinoza*, 45 F.3d at 310 (citing *Trias–Hernandez v. INS*, 528 F.2d 366, 369 (9th Cir. 1975)).  To prevail on a due process challenge, a petitioner must show constitutional "error and substantial prejudice." *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020) (quoting *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000)).  Here, the IJ cited *Espinoza* and admitted the Form I-213 over Smith's "objection that its contents may have been inaccurate" and the rap sheet over his "objection that it lacked reliability due to an error" because the IJ concluded that the exhibits were probative and it was fundamentally fair to admit them.  The BIA also cited *Espinoza* and noted that Smith had not presented evidence suggesting that the Form I-213 was incorrect or that the IJ was not permitted to choose between permissible readings of the rap sheet.  The BIA's decision on appeal also observed that Smith later testified that he was born in Guyana.  We see no error in the BIA's reliability ruling.  *See Hernandez v. Garland*, 52 F.4th 757, 768 (9th

Cir. 2022) ("Hernandez failed to offer any reason to doubt the accuracy of the information in the form . . . . The agency therefore permissibly relied on the information in the Form I-213."); *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 824 (9th Cir. 2003) ("Rojas-Garcia does not cast doubt on the probative value or fairness of the evidence presented; he does not present any contrary evidence . . . ."). We therefore deny Smith's due process challenge.

## B. CAT relief

Finally, Smith argues that the agency erred by denying him CAT relief because it: (1) failed to consider evidence about mental healthcare and related policing issues in Guyana; (2) failed to aggregate Smith's theories of future torture; and (3) misapplied the standard for government acquiescence.

Smith is correct that the agency must consider "all evidence relevant to the possibility of future torture" when adjudicating CAT claims. *Parada v. Sessions*, 902 F.3d 901, 914–15 (9th Cir. 2018) (quoting *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011)). But the agency's decision to credit some parts of the record over others does not mean it ignored relevant evidence. The IJ specifically cited parts of the record that supported Smith's case, including deficiencies in Guyana's mental health system, violence at psychiatric institutions, dangerous prison conditions, and the criminalization of suicide. The IJ and BIA were not required to discuss each of the approximately 1300 pages of evidence that Smith submitted. *See Cole*, 659 F.3d at 771. There is no indication that the IJ ignored "highly probative or potentially dispositive evidence." *Id.* at 772.

The IJ correctly evaluated Smith's risk of torture from each source he raised (mental health problems, race, and

status as a deportee with prior convictions), and evaluated the aggregate risk. The IJ correctly applied the chain rule from *Matter of J-F-F-*, 23 I. & N. Dec. 912, 917–18 (A.G. 2006), which required Smith to prove that each link in a hypothetical series of events leading to torture was more likely than not to occur. *See Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1155 (9th Cir. 2022). The IJ correctly concluded that this standard had not been met for one of Smith's theories of future torture: being denied access to psychiatric medication, becoming suicidal, calling a government suicide hotline, getting arrested, and being tortured in prison. The IJ separately analyzed Smith's other risks of torture before aggregating the risks from all sources. Substantial evidence supports the IJ's conclusion that the aggregate risk of torture did not surpass the more likely than not threshold.

The BIA did not err when it affirmed the IJ's ruling that Smith failed to show that Guyanese officials will acquiesce to violence by psychiatric inmates. The record included evidence that the Guyanese government is attempting to combat violence in psychiatric institutions, which does not support a finding of acquiescence even if those measures have been unsuccessful to date. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1035 (9th Cir. 2014). We therefore conclude that substantial evidence supports the agency's determination that Smith does not qualify for CAT relief.

The motion for a stay of removal and the supplemental motion for a stay of removal are denied. The temporary stay of removal shall remain in place until the mandate issues.

**PETITION DENIED.**

JOHNSTONE, Circuit Judge, dissenting:

The Department of Homeland Security failed to prove Smith's removability by clear and convincing evidence. As the majority opinion explains, our cases and the Department's regulations require some form of authentication in immigration proceedings.[1] In this case, the Department did not authenticate the only evidence that established Smith's alienage, Smith objected to the admission of that evidence, and the Government forfeited any challenge to the sufficiency of Smith's objection. I disagree with the majority opinion's holding that Smith's objection to the *authenticity* of the alienage evidence was inadequate. And anyway, I would not excuse the

---

[1] The majority opinion's careful analysis of the relevant regulations serves as a helpful prologue for a future case. I add only that the "confusion . . . concerning [our] authentication requirement," *Iran v. INS*, 656 F.2d 469, 472 (9th Cir. 1981), originates in our caselaw before the regulations in question. In *Chung Young Chew v. Boyd*, 309 F.2d 857 (9th Cir. 1962), we first required authentication of evidence in immigration proceedings, relying on the permissive authentication standard of Federal Rule of Civil Procedure 44. *See Chung Young Chew*, 309 F.2d at 867 (explaining that Rule 44 allowed "proof of official records by any method authorized by any applicable statute [or] by the rules of evidence at common law"). The original 1965 regulations also allowed authentication under a permissive standard. *See* 30 Fed. Reg. 12248 (Sept. 24, 1965) (providing certain methods by which domestic official records "may be evidenced" in immigration proceedings). Arguably, the 1985 amendments do not. *See* 50 Fed. Reg. 37834 (Sept. 18, 1985) (amending the operative verb from "may" to "shall"). Yet our cases have continued to follow the permissive approach first established in *Chung Young Chew*. *See, e.g.*, *Espinoza v. INS*, 45 F.3d 308, 309–10 (9th Cir. 1995) ("The Ninth Circuit requires only that immigration forms be authenticated through some recognized procedure, such as those required by INS regulations or by the Federal Rules of Civil Procedure.").

Government's inarguable failure to challenge Smith's arguable objection to evidence that was, after all, inarguably inadmissible. Because I would grant the petition to hold the Government to its burden of proof, I respectfully dissent.

Smith contested the evidence against him from the start. He denied removability. So the Department got a continuance to produce admissible documents establishing Smith's alienage and deportability. At his hearing, Smith objected to the Department's evidence of alienage on authenticity grounds, citing its regulation on authentication, 8 C.F.R. § 287.6. Smith confusingly combined his authenticity and reliability objections, reflecting the Government's own conflation of the two throughout these proceedings. But Smith's authenticity objection to the alienage evidence is apparent from the context of the discussion among Smith, the Department, and the IJ at the hearing. *Cf.* Fed. R. Evid. 103(a)(1)(B) (the specific grounds for an objection are preserved if "apparent from the context"). The Department not only had notice of his authenticity objection but responded to it on those same grounds. Its counsel vouched for the fact that the challenged documents were official records obtained through a proper custodial chain—in other words, that they were authentic. Counsel claimed that the USCIS printout was from "an official DHS database," the criminal-history record (or "rap sheet") was "an official FBI record," and the Form I-213 was "an official DHS record." These representations could not, without more, authenticate the documents. *See Iran*, 656 F.2d at 473. But they establish that Smith's objection at the hearing was sufficient "to alert [the judge] to the proper course of action and enable opposing counsel to take corrective measures." *United States v. Gomez-Norena*, 908

F.2d 497, 500 (9th Cir. 1990) (quoting Fed. R. Evid. 103 advisory committee's note to subdivision (a)).

Smith then exhausted his authenticity objection through his appeal to the BIA. His brief challenged the admission of the alienage evidence, stated the authentication requirements of *Iran* and 8 C.F.R. § 287.6, then argued that "the documents included in the Department's Supplemental Filings," which include the documents at issue, "are not authenticated nor reliable." Smith's arguments were enough to put the BIA, too, on notice of his objection. *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) (citing *Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020)). Smith did everything we typically expect in exhausting his challenge to the authenticity of the alienage evidence. *Cf. Baliza v. INS*, 709 F.2d 1231, 1233–34 (9th Cir. 1983) (explaining that even where a petitioner "did not clearly direct his challenge to the lack of authentication," reviewing the petitioner's challenge to the admission of the document on other grounds "necessarily encompasses some consideration of the affidavit's authenticity").

The majority opinion takes an unduly strict view of Smith's objection; it is not so strict with the Government's argument. It denies Smith's petition on grounds the Government first raised at oral argument. Until then, the Government distinguished between documents it conceded that Smith "specifically challenged," including the unauthenticated I-213 that the BIA relied on, and the judgment of conviction, which it argued Smith did not challenge before the IJ or BIA. "Generally, an appellee waives any argument it fails to raise in its answering brief." *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc). Sometimes "we can 'make an exception to waiver . . . in the exceptional case in which review is necessary to

prevent a miscarriage of justice or to preserve the integrity of the judicial process.'" *Id.* (alteration in original) (quoting *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012)). But this is not an exceptional case.

To reach the Government's last-minute argument, the majority opinion relies on *Alonso-Juarez v. Garland*, 80 F.4th 1039 (9th Cir. 2023), where the issue was "fully briefed, our court [had] expended significant time and resources on it, and resolving the issue [was] of great public importance to the many petitioners similarly situated." *Id.* at 1046. The majority opinion also cites *United States v. Salman*, 792 F.3d 1087 (9th Cir. 2015), another case in which the issue was fully briefed by both parties, this time "before oral argument." *Id.* at 1090. But here the Government never briefed the sufficiency of Smith's authenticity objection. Smith could not respond until his rebuttal at oral argument, just minutes after hearing the Government's argument for the first time. And the sufficiency of Smith's objection is a record-bound dispute. If this case presents any "important issue[]" likely to "reoccur until [it is] addressed by the court," *Dreyer*, 804 F.3d at 1278, that issue is the Government's fully briefed failure to authenticate its alienage evidence.

The majority opinion supports its decision to forgive the Government's omissions with two additional pieces of evidence: Smith's criminal-history record and his asylum application. But neither the BIA on its review nor the Government before us relied on this evidence to establish Smith's alienage, and for good reasons. *First*, the Government's briefing disclaimed reliance on Smith's unauthenticated criminal-history record for evidence of his alienage—in contrast to its reliance on that record for evidence of his conviction—presumably because the

document states, unreliably, that Smith was born in both Guyana and Wisconsin. Even after the Government newly contested the sufficiency of Smith's authenticity objection at oral argument, it still stopped short of the majority opinion's endorsement of this inconsistent criminal-history record as proof of Smith's alienage. Like the Government, the BIA also relied exclusively on the I-213 to affirm the IJ's finding of alienage; it only mentioned the criminal-history record to reject Smith's argument that the self-contradicting document undercut its reliance on the I-213. *Second*, neither the BIA nor the Government relied on, or could have relied on, alienage information that Smith later provided in support of his asylum application, which the majority opinion cites to support its decision. *See* 8 C.F.R. § 1240.11(e) ("An application under this section . . . shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his or her alienage or deportability."). Rather than exercise discretion to relieve the Government of its burden of proof, I would exercise restraint in taking the Government's arguments as presented.

Authentication is a foundational, if technical, rule of evidence. "Men must turn square corners when they deal with the Government," Justice Holmes once wrote for the Supreme Court. *Rock Island, A. & L. R. Co. v. United States*, 254 U.S. 141, 143 (1920). "But it is also true," the Court recently observed in addressing immigration law, "particularly when so much is at stake, that 'the Government should turn square corners in dealing with the people.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. ___, 140 S. Ct. 1891, 1909 (2020) (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)). Our cases have, at times, allowed parties to

round these square corners when authenticating evidence in immigration hearings—including documents used to prove a person removable from the country "by clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 277 (1966). But in this case, whether by its standards or our own, the Government cut a corner completely by failing to authenticate its proof of Smith's alienage. I respectfully dissent.